(No. 14015.—Judgment affirmed.)

The Joliet and Eastern Traction Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*— (Gust Walters, Defendant in Error.)

*Opinion filed October 22, 1921.*

1. Judgments and decrees—*transcript of record may be filed within required time after rendition of decree in vacation.* Notwithstanding a decree may be entered in vacation as of the preceding term, a transcript of record is regarded as filed in apt time if filed within the required time after the actual rendition of the decree in vacation.

2. Workmen's compensation—*when petition for writ of error is properly filed at second term of Supreme Court following rendition of judgment.* A petition for a writ of error is properly filed for review at the second term of the Supreme Court following the rendition of the judgment of the circuit court where said judgment is rendered in vacation as of a date during the previous term of the circuit court, even though there are more than thirty days from said date until the ensuing term of the Supreme Court, provided there are less than thirty days from the actual entry of the judgment in vacation until such ensuing term.

3. Same—*whether employee is totally and permanently incapacitated is a question of fact.* There is no rule by which to distinguish between disability which renders one wholly and permanently incapable of work and such disability which does not render one wholly and permanently unable to work, and the extent of the injury does not present a question of law for the court but it is a matter for the sound judgment and discretion of the arbitrator and the Industrial Commission, provided that in enforcing the statute they substantially comply with its provisions.

4. Same—*fact that employee has worked after being injured is not conclusive on question of permanent total disability.* Where an employee, whose education is limited, has never done anything but manual labor, the fact that he was employed for a short time after recovering from a severe injury may be evidence of partial ability

to work but is not conclusive of the question whether his injury left him totally and permanently unable to work, as the statute does not require an applicant to continue working if it will cause him to continuously suffer serious discomfort and pain while so engaged.

5. SAME—*previous payments should not be deducted from the amount taken as a basis for estimating pension for permanent total incapacity.* Paragraph (*f*) of section 8 of the Compensation act of 1919, read in connection with paragraph (*a*) of section 7, does not require that previous payments of compensation be deducted from the amount to be taken as a basis for estimating a pension for an injury resulting in a permanent total incapacity, but the pension should be figured from the total sum which would have been paid as a death benefit under said provision of section 7 if the employee had died as a result of the injury.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

GARNSEY, WOOD & LENNON, (JOHN H. GARNSEY, and EDWARD C. HALL, of counsel,) for plaintiff in error.

FAULKNER & FAULKNER, (RAY F. FAULKNER, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The record shows that Gust Walters was injured September 24, 1917, while acting as track and section foreman for plaintiff in error. The evidence shows that the injury arose out of and in the course of the employment and that both parties were under the Workmen's Compensation act; that Walters had been receiving $70 a month for his work previous to his injury; that he had a wife and two children under sixteen years of age; that plaintiff in error had paid him $640 compensation up to July 15, 1919, together with a hospital bill of $175 and a doctor's bill of $200.

In the accident Walters had the index finger of his right hand, the right arm and six ribs broken, his back badly wrenched and the right hip injured. He was taken to the hospital at Joliet for medical and surgical attention and remained there until sufficiently recovered to return to his home in Frankfort, nine miles east of Joliet, and thereafter

for some time visited Joliet twice a week to see the doctor. On July 8, 1918, while yet using a cane to get about, he put a box on a chair at his home in Frankfort and stood on the box to saw off a tree limb on which a swarm of bees had settled, and when getting down he fell, causing a fracture of the lower part of the right leg, but whether of both bones is not clear. He was confined to his home under the doctor's care for about six weeks and thereafter used crutches more or less until March 1, 1919, when he discarded them and so far as the record shows was not using them at the time of the hearing concerning this second injury before the arbitrator in April, 1920. In July, 1919, having become a resident of Joliet, he secured employment with the Michigan Central Railroad Company as a track flagman or torpedo man with a repair gang four miles east of Joliet, riding to and from his work on a handcar, and worked at his employment for about eighteen days, when he quit, stating he could not stand it, and after that did no work up to the time of the hearing. His education was limited, not being beyond the fourth grade at school, and his employment had always been manual labor up to the time of his injury.

The principal question urged here is whether or not the finding of the arbitrator, confirmed by the Industrial Commission, is sufficient under the statute. The recovery seems to have been made under paragraph (*f*) of section 8 of the Workmen's Compensation act, which reads in part: "In case of complete disability, which renders the employee wholly and permanently incapable of work, compensation equal to fifty percentum of his earnings." (Hurd's Stat. 1917, p. 1454.) The arbitrator found that the applicant was entitled to have and receive from his employer the sum of $9.69 per week for 346 weeks and one week at $7.26, and after that a pension for the remainder of his life at $22.40 per month, as provided in paragraph (*f*) of section 8, for the reason that the injuries sustained caused

permanent and complete disability; that the applicant had received $640 and was then entitled (April 17, 1920,) to $619.70, the amount accrued from October 1, 1917, to April 16, 1920, the remainder of the award to be paid in semi-monthly payments, commencing April 23, 1920, except the pension, which should be paid monthly. This award was sustained by the Industrial Commission, and on hearing in the circuit court a judgment to the same effect was entered.

A motion has been made by the defendant in error to deny the petition for a writ of error to this court on the ground that the judgment sought to be reviewed was entered in the circuit court on December 31, 1920, and that more than thirty days intervened between that date and the first day of the February term, 1921, of the Supreme Court. It would appear from the record and arguments that the judgment was filed with the clerk of the circuit court on January 21, 1921; that plaintiff in error had no dependable date or record before said last named date upon which to proceed for review, and that for the purpose of a writ of error in this proceeding the judgment could not be considered entered until filed for record with the clerk. Sub-paragraph 2 of paragraph (*f*) of section 19 of the Workmen's Compensation act provides that judgments and orders of the circuit court under the act shall be reviewed by the Supreme Court by writ of error "if applied for not later than the second day of the first term of the Supreme Court following the rendition of the circuit court judgment or order sought to be reviewed," provided, etc. (Laws of 1919, p. 548.) In *Chicago Great Western Railroad Co.* v. *Ashelford,* 268 Ill. 87, the court said (p. 92) : "There are certain purposes, however, for which a judgment is required to be duly entered before it can become available or be attended by its usual incidents. Thus, as above remarked, this is a prerequisite to the right to appeal." (See, also, to the same effect, 1 Black on Judgments,—2d ed.—sec. 106.) Notwithstanding a decree may be entered in vacation as

of the preceding term, a transcript of record is regarded as filed in apt time dating from the actual rendition of the decree in vacation. (*Owens* v. *Crossett,* 104 Ill. 468; *Hook* v. *Richeson,* 106 id. 392.) In our judgment the same rule should apply in an action in the nature of a special statutory proceeding such as this where the presiding judge in fact rendered his decision in vacation, namely, January 13, but as of December 31 previous, and the actual entry of his judgment and order was not made until January 21. Under the state of facts as shown on this record with reference to the petition for writ of error in this court, we are of the opinion that this court has jurisdiction and that the motion to dismiss the writ of error must be denied.

It is argued by plaintiff in error that Walters is not entitled to the weekly payments allowed, and after that a monthly pension for the remainder of his life, for the reason that the injuries sustained are not shown to have caused permanent and complete disability; that the testimony in the record does not show that the employee was rendered wholly and permanently incapable of work; that he apparently retained his mental powers and was crippled physically only in part. Counsel have attempted to show by quoting from the dictionaries that the provision of the statute which states, "so as to be permanently incapable of work," indicates a greater degree of infirmity than the words "permanent and complete disability." There can be no plain and distinct rule laid down that will clearly distinguish between complete and permanent disability which renders one wholly and permanently incapable of work, and such disability which does not render one wholly and permanently incapable of work. A man may have so devoted himself to manual labor without attempting to cultivate his mental faculties that the loss of his right arm might seem to him to have completely disabled him to do any work for which he might feel he was fitted or could fit himself, and yet the experience of different men has shown this is not always

true. On the other hand, the fact that one man has been able to secure some kind of employment handicapped by the loss of one or more of his members is no proof that all other men so severely handicapped will be able to continue in employment. In our opinion the only reasonable rule to follow in construing the statute is to make it a matter for the sound judgment and discretion of the arbitrator and Industrial Commission, provided that in enforcing the statute they substantially comply with its provisions. To know whether one is completely incapable of work might in one case require knowledge of many facts, while in another case the fact of complete disability might be so apparent,—as where one is totally paralyzed or insane,— that there could be no disagreement on the part of anyone as to the question. In *Frey* v. *Kerens-Donnewald Coal Co.* 271 Ill. 121, it was held that an award of compensation for a permanent injury was justified by evidence which showed that the applicant had suffered paralysis of one side, so as to incapacitate him for work. The record showed that he could walk but that he could not work. In *Mc-Garry* v. *Industrial Com.* 290 Ill. 577, the applicant received a shock through a telephone receiver which left his face partially paralyzed and he afterwards suffered pains in his back and head. There was testimony that he had an organic disease, due, in part, to the habitual use of intoxicating liquors. The Industrial Commission made an award, part of which was a pension for life. On the facts shown in the case this court held that it could not interfere with the Industrial Commission's finding on the merits. In *Illinois Midland Coal Co.* v. *Industrial Board,* 277 Ill. 333, where the finding of the Industrial Board stated that the applicant "is now totally disabled," it was held that a man might be totally disabled and yet be not permanently disabled. In the case before us the finding was that the applicant was both totally and permanently disabled. In *Ballou* v. *Industrial Com.* 296 Ill. 434, it was held that the loss of the

use of both hands is not necessarily equivalent to the loss of both hands, and that the finding that "the injuries sustained have caused complete disability, which renders the petitioner wholly and permanently incapable of work," was not based upon the testimony, because it was shown that he did janitor work, in which he used a broom and wheelbarrow, and that for two months he earned $50 per month as watchman, and that he worked at clam fishing, poling the boat up and down the river by means of a push pole, which he used with his hands.

The testimony in this record shows that the applicant's pelvis was so injured that it was made narrow and that the motion of the hip joint was limited and the probable pressure of bone on soft structure might cause pain, and one of the physicians who examined him testified that he might lift some but would be greatly handicapped in bending and lifting and would not be able to perform labor requiring considerable walking. While the eighteen days he worked as flagman might be some evidence of partial ability to work, the statute does not require an applicant to continue to work if it will cause him to continuously suffer serious discomfort and pain while he is so engaged. In *O'Callaghan* v. *Industrial Com.* 290 Ill. 222, it was held that the weight of the competent evidence as to the extent of the injury does not present a question of law for the consideration of the court; and this would apply whether the testimony concerned a total and permanent disability or one of less extent. We cannot say from the evidence in the record that the Industrial Commission was not justified in finding that the applicant was completely and permanently disabled by the injury in question.

It is further argued by plaintiff in error that in ascertaining the amount to be paid monthly to the applicant as a pension, the Industrial Commission, in arriving at the amount of the annual earnings upon which to base the pension, should have deducted the $640 paid to him. Para-

graph (*f*) of section 8 provides that the payments shall commence "on the day after the injury, and continuing until the amount paid equals the amount which would have been payable as a death benefit under paragraph (*a*), section 7, if the employee had died as the result of the injury at the time thereof, * * * and thereafter a pension during life annually equal to eight per cent of the amount which would have been payable as a death benefit under paragraph (*a*), section 7, if the employee had died as a result of the injury at the time thereof." It is further argued that in ascertaining the amount that shall serve as a basis for the pension, paragraph (*a*) of section 7 must be construed in connection with paragraph (*f*) of section 8, but that in ascertaining the amount that would be payable as a death benefit under paragraph (*a*) of section 7 any compensation other than necessary surgical or hospital fees must be deducted before ascertaining the amount payable on the death, and that as Walters' monthly wage was $70, or an annual wage of $840, four times that amount would be $3360, which would constitute primarily the death benefit payable to the widow and children under paragraph (*a*) of section 7, and would serve, ordinarily, as the basis of the pension to be allowed to the applicant under paragraph (*f*) of section 8, but that as $640 had already been paid to the applicant, this amount, under the provisions of the last sentence of paragraph (*a*) of section 7, must be deducted from the $3360 before figuring the pension, leaving $2760 as the amount upon which the eight per cent should be figured, and that this would give a pension, as claimed by counsel for plaintiff in error, of $18.33⅓ per month, instead of $22.40 per month as fixed by the Industrial Commission. We do not agree with this argument of counsel for plaintiff in error. Paragraph (*f*) of section 8 with reference to the pension distinctly provides that the pension is to be ascertained under paragraph (*a*) of section 7, and is to equal the amount payable as a death benefit "if the employee

had died as the result of the injury at the time thereof."
If the employee had died at the time of the injury there
would not have been any compensation payments to be
deducted in ascertaining the amount payable as a death
benefit. The argument of counsel, if carried to its logical
conclusion, it seems to us, would, in effect, require para-
graph (f) of section 8 to be construed so that if under the
first part of said paragraph the amount paid should equal
the amount of the death benefit there could be no pension
allowed thereafter, and surely that was not the intention of
the legislature as to the proper construction of said para-
graph. Reading paragraph (f) of section 8 in connection
with paragraph (a) of section 7, we think it is manifest that
the Industrial Commission rightly figured four times the
average annual wage of $840 as the basis upon which the
pension should be fixed, without deducting the amount that
had theretofore been allowed and paid the applicant as
compensation.

　　Finding no error in the record the judgment of the cir-
cuit court will be affirmed.          *Judgment affirmed.*

------

(No. 13842.—Reversed and remanded.)
ALEXANDER W. HANNAH, Plaintiff in Error, *vs.* HENRY
MEINSHAUSEN, Admr. Defendant in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 7, 1921.*