(No. 15305.—Judgment affirmed.)

THE SPRING VALLEY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOE WINSLOW, Defendant in Error.)

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

WORKMEN'S COMPENSATION—*when an award for permanent disability will be sustained.*   An award for permanent total disability will be sustained where it is manifest from the evidence as to the nature of the injury and the age of the employee, and from the testimony of the injured man and his physicians as to his condition and his ability to work, that he has been permanently injured, although the physicians do not, in their testimony, express the opinion that the employee will never be able to work.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

JOHN J. SHERLOCK, McDOUGALL & CHAPMAN, and H. H. BAYNE, for plaintiff in error.

PAUL D. PERONA, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

An application for an adjustment of a claim was filed by defendant in error, Joe Winslow, May 31, 1921, against plaintiff in error, reciting that he was injured on October 2, 1919, by an accident arising out of and in the course of his employment by the Spring Valley Coal Company. An award was entered by the arbitrator in favor of the applicant, wherein it was held that he was entitled to $9.87 per week for 354 weeks and $6.02 for one week, and thereafter a pension during life equal to $280 annually. The Industrial Commission confirmed the arbitrator's award and the circuit court affirmed the award of the Industrial Commission, and the case has been brought here for further review by petition for writ of error.

It appears from the record that the applicant resided at Spring Valley, in Bureau county, and was injured in the plaintiff in error's mine No. 5 at Dalzell while bringing an empty car into his place. While doing so a loaded car ran over him and crushed him, dragging him along the ground for some distance. On the hearing before the arbitrator it was stipulated that the parties were operating under and were subject to the Workmen's Compensation act, and other facts were stipulated, none of which are disputed here, from which it seems clear that the applicant was entitled to an award as to some amount. The only question in dispute here is the nature and extent of the injury and whether or not there is a permanent total disability resulting from the injury. There is no dispute as to how the injury happened. The applicant was injured in his back, side and chest. After the injury he was taken by the company to the Spring Valley Hospital and was there five weeks and five days, receiving treatment under the direction of the plaintiff in error. At the end of that time he was allowed to go to his home in Spring Valley. Shortly thereafter he visited the mine, where he remained for about a day, and then decided, in a talk with the mine authorities, that it was necessary for

him to go home, where he went and remained in bed for three weeks. After that he was taken, apparently by the plaintiff in error, to the Wesley Hospital, in Chicago, and was there cared for by Dr. Magnuson, who testified for plaintiff in error, remaining there under the care of the physician for five months and a few days, being discharged some time in July, 1920. Thereafter he applied to the mine authorities in Spring Valley to be given work and was told that he would be given a job at trapping when opportunity offered. He testified on the hearing that he felt about the same as he did before he was hurt, but that he could not shovel or do heavy work because it hurt his shoulders and back; that he tried to dig a little in his garden but could not do it because it hurt his back around the spine. He also applied for light work in Kewanee but could not obtain it, and it does not appear that the Spring Valley Coal Company has ever offered him a job at trapping or other light work since he first applied for work after his return to the mine.

Dr. Raymond Davis, who has had considerable experience in taking X-ray pictures of injuries, took an X-ray picture, before this hearing, of defendant in error, covering the body in the region of the applicant's injury, commencing at the eleventh dorsal vertebra, just above the small of the back. He testified that the picture showed a distinct lipping of the first lumbar vertebra; that fluid from the injured vertebra flowed, forming an exudation from the affected portion of the injured spine, and that this fluid by gravity descended the ligaments along the periosteum and vertebral discs, and that the fluid would tend to become ossified and would greatly hinder the proper working of the vertebra of the injured man if it did not re-absorb before it ossified; that this condition of the vertebra seems to have progressed since the injury; that he could not testify whether the applicant would so recover from the injury as to be able to do the work that he had done before the in-

jury; that there appeared to be crepitation in the shoulders and in the knee joints, and that all movements of the spine were limited; that dorsal flexion was almost entirely destroyed; that the applicant could not flex more than thirty degrees; that the lumbar curve was slightly increased and that just above the fifth sacrum the lumbar curve was absolutely set; that the arthritis from which applicant was suffering was partially due, so far as he could ascertain, from a former trouble before this injury took place; that arthritis takes the form of deposits of bone around the edges of the joints of the spine, sometimes around the bodies of the vertebræ, in the ligaments, tending to ossify certain portions of the ligaments as it progresses; that he could not say with certainty whether the applicant would improve or would have ankylosis of the spine; that nobody could tell whether this state would increase, be arrested or be continued, or that he would be entirely incapacitated.

Dr. Paul B. Magnuson, who treated the patient at Wesley Hospital, testified that he found on February 13, 1920, a fracture of the sternum at the junction of the third and fourth ribs; that he complained of pain in the upper chest and the right shoulder and in the back; that the X-ray picture' showed the fracture of the lateral process of the left side and the rotation of the fifth lumbar to the right; that the applicant improved under his care and the pain that he complained of seemed to have disappeared. Dr. Magnuson's testimony was practically in accord with the testimony of Dr. Davis as to arthritis coming from the vertebræ. He testified that the applicant had bad teeth and was troubled with pyorrhea; that when the applicant left the Wesley Hospital his general condition was very much improved; that the main trouble with the chest and neck had cleared up and that for the age of the man there was nearly normal motion in the back at the time he left the hospital; that he thought the applicant was able to do graduated

work,—light at first, then graduated up,—but that a prematurely old man such as applicant appeared to the doctor to be,—past sixty years of age although he testified he was only fifty-four,—would not be able to get back eventually to the point of recovery that he would if he were a younger man; that in his judgment the applicant would probably gradually recover into the condition he normally was in before this injury; that he could not say whether the injury would result in a permanent disability.

The applicant testified on the hearing before the arbitrator that he could not shovel or dig or do any heavy work. On the hearing on review, which was about six and a half months after the previous testimony, the applicant stated that at that time he was not able to dig in the garden because his back hurt; that he wore a brace and had a pain in his chest and left side. There was no testimony, except the applicant's, taken on review. The testimony of the two doctors before the arbitrator and the testimony of the applicant was practically all the testimony as to the effect of the injury.

While it is clear from the record, as argued by counsel for plaintiff in error, that the opinions of the physicians as to the permanent nature of the injury were not stated in their testimony, it is manifest from the testimony of the injured man, Winslow, taken in connection with the testimony of his physicians as to the actual injuries he had received, that the man has been permanently injured, and the Industrial Commission was justified in entering the award for permanent total disability as a result of the accident.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*