THE CONSOLIDATED COAL COMPANY OF ST. LOUIS, Plaintiff in Error, vs. THE INDUSTRIAL COMMISSION et al.— (GEORGE DILLON, Defendant in Error.)

*Opinion filed February 18, 1926.*

1. WORKMEN'S COMPENSATION—*what evidence supports finding that disability is due to injury.* Evidence that a miner, who received an injury to his back by a falling rock, has been unable to perform any kind of manual labor since he was injured but had worked daily prior thereto, tends to support a finding that the disability is due to the injury, notwithstanding expert testimony that he had been in poor physical condition for some time and had a rupture which was not due to the injury.

2. SAME—*when finding of Industrial Commission will not be disturbed.* Where the facts are controverted and the determination of disputed questions of fact depends upon the credit to be given contradictory testimony the courts will give due weight to the finding of the Industrial Commission, as it is qualified by experience and special study to weigh the facts applicable to cases within its jurisdiction.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

EDGAR P. HOLLY, (JOSIAH WHITNEL, and H. L. BROWNING, of counsel,) for plaintiff in error.

A. W. KERR, and GEORGE R. STONE, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

George Dillon, a coal miner employed by plaintiff in error, was injured October 20, 1922, by a rock weighing twelve pounds falling from a height of ten feet on the small of his back while he was in a stooping position. He fell to the ground, where he lay about a half hour, and was then taken out of the mine and to his home. He had worked steadily in the mine eight years before his injury, and dur-

ing the year next prior to his injury had earned an average of $10.39 per day when the mine was at work. Dillon was fifty-two years old when he was injured and had a wife, and four children under sixteen years of age. Plaintiff in error paid him $493 compensation, which was at the rate of $17 per week for 29 weeks. Payments were then stopped and Dillon filed his application for adjustment of his claim for compensation. The arbitrator made an award of $17 per week for 29 weeks and $12 per week for 200 weeks, under paragraph (*d*) of section 8 of the Workmen's Compensation act, for partial incapacity and loss of earning power, and ordered that credit be given for the $493 paid. Plaintiff in error caused the award to be reviewed by the Industrial Commission. The award of the arbitrator was sustained, and the case was taken to the circuit court on writ of *certiorari.* That court confirmed the award, and this court granted the petition of plaintiff in error for a writ of error.

The sole question involved is whether the evidence justified the award. No question is raised as to Dillon's right to an award, but it is contended the evidence does not show his physical condition is the result of the injury of October 20, and that it affords no basis for the award of $12 per week for 200 weeks for partial disability.

The evidence consists of the testimony of Dillon and three physicians. Dillon testified he had a rupture in March, 1922, but it did not interfere with his work. When the rock fell on his back he was disabled, confined to his bed three weeks, and was under the treatment of Dr. McKee until December 13, when he went to a hospital at Murphysboro and had an operation performed for his rupture. His principal trouble and pain was in his back, but there was some pain at the seat of the rupture. He had done no work since his injury, in October. The pain in his back and right side was not getting any better. He thought he might be able to do trapping or some light work. He had not been

able to sleep well and could not lie on his right side. It was difficult for him to straighten up after stooping over. He had tried to sweep the floor of his house with a broom but could not do it. He is a very illiterate foreigner, and we think his testimony, as well as that of the doctors who testified on behalf of plaintiff in error, shows he is in a bad physical condition. He is reduced in weight from 175 to 135 or 140 pounds and has visited Chicago three times for treatment at his own expense, at a cost of $140.

Dr. McKee treated Dillon from the time he received his injury until he went to the hospital to have an operation performed for the hernia, which Dillon testified had been aggravated and gave him trouble after his injury. Dr. McKee testified he complained of his back and of the rupture. The wounds in the back were deep bruises and cuts, which got well. After he returned from the hospital the doctor had him under observation for some two months but did not give him any treatment. The doctor testified the operation performed in the hospital seemed to have been successful, and in his opinion Dillon was able to do some kind of work. He took no X-ray pictures of the patient.

Dr. Roberts, a witness for plaintiff in error, had practiced his profession twenty-two years and had a large experience in mine injuries. He examined Dillon in January, 1924, and in May following. His general appearance was not of a man in average health. He had a slight limp and tended to drag his left foot. He also had pyorrhea and indications of arthritis in the hip joints, which the doctor said was caused by focal infection and not by any injury. He had organic heart trouble, and the doctor said in his opinion Dillon's condition was due to the heart trouble, abnormal blood pressure, pyorrhea and its consequent symptoms. There was a diseased condition of the spinal column, which the doctor said was due to infection. That was his condition in January. When he examined him in May his condition had improved, except the pyorrhea, and that and

its consequent symptoms had increased. There was a possible fracture of the right transverse process. The doctor expressed the opinion that the condition of Dillon was not due to the rock falling on his back.

Dr. Sabine performed the operation for the rupture. He testified he saw Dillon in October, 1923, and that the hernia was cured and he appeared to be in good health. He could find no symptoms of disability.

Both Dr. Sabine and Dr. Roberts took X-ray pictures in their examination of Dillon, and Dr. Sabine found no conditions which he thought would cause any disability, while Dr. Roberts described conditions which would necessarily cause some disability, but he attributed the conditions to other causes than the injury.

The evidence warrants the conviction that Dillon is in a rather bad physical condition, and his testimony is not contradicted that prior to his injury, October 20, while he had a rupture, he was under no disability which interfered with his work as a coal miner. He testified that before his injury he worked every day the mine worked, some days loading fifteen tons of coal. He had not worked any since the injury, and while he testified he thought he could do some light work, it is apparent, if his condition is such as the evidence apparently shows it to be, he is not fit for any kind of employment that a man of his intelligence and abilities could perform. He is wholly unsuited for any employment but manual labor, and testified that when he stoops over it is difficult for him to straighten up again, which would certainly be a very sudden development of an organic condition which had existed for some time previous to his injury, or from a focal infection, as testified to by the doctors, which would so suddenly produce the physical condition which Dillon appears to be in, and to have been in since he received his injury. This affords some proof in support of the claim of Dillon that the condition of his health is due to the injury. (*Chicago Union Traction Co.*

v. *May,* 221 Ill. 530.)   It is true, as contended by plaintiff
in error, that the evidence must preponderate in favor of
the claimant to justify an award, and this court has so de-
cided many times, but "where the facts are controverted
and the determination of the disputed question of fact de-
pends upon the credit to be given contradictory testimony
the courts will give due weight to the finding of the com-
mission, which is qualified by experience and special study
to weigh facts applicable to cases within its jurisdiction."
*Consolidated Coal Co.* v. *Industrial Com.* 311 Ill. 61.   See,
also, *Spring Valley Coal Co.* v. *Industrial Com.* 309 Ill. 215.

When all the testimony is considered, no valid reason
appears from the evidence why the award should be set
aside, and the judgment of the circuit court confirming the
award is affirmed.                           *Judgment affirmed.*