## JOHN E. GURTIN v. OVERLAND-KNIGHT COMPANY AND ANOTHER.[1]

December 13, 1929.

No. 27,623.

*F. C. Elston,* for relators.
*Walter F. Dacey* and *Norbert L. Wilson,* for respondent.

DIBELL, J.

Certiorari by the defendant employer and its insurer to review the order of the industrial commission awarding the plaintiff employe compensation for 100 weeks, upon the ground that he had suffered a 50 per cent disability of his leg through an accidental injury.

The plaintiff sustained an injury to his knee. At the time of the trial there was little flexion. The three physicians who testified gave their opinion that in a few months, perhaps two or three, there would be complete ankylosis. Considering the nature of the injury a condition of complete ankylosis was desirable. The employe would then have a definite permanent partial disability and would be able to work to the extent of his impaired ability and better than

[1] Reported in 228 N. W. 169.

prior to complete ankylosis. The compensation allowed for the loss of the leg is two-thirds of the employe's wages for 200 weeks. G. S. 1923 (1 Mason, 1927) § 4274(19). In case of a partial disability the workman receives compensation at the prescribed rate "during that part of the time specified in the schedule for the total loss of the respective member, which the extent of injury to the member bears to its total loss." G. S. 1923 (1 Mason, 1927) § 4274(41). The referee found 25 per cent disability. The commission found 50 per cent. The employer and insurer claim that it should be 25 per cent.

The matter of determining the amount of the permanent partial disability is difficult. Under the same phraseology in the earlier law, in State ex rel. Globe Ind. Co. v. District Court, 136 Minn. 147, 150, 161 N. W. 391, 392, Mr. Justice Bunn said:

"It is doubtless a difficult question, on almost any evidence, to determine just how an injury that is not equal to a total loss of a member compares in extent with such a total loss. But the law requires that this comparison be made, and that the period during which the payments are to continue be determined therefrom. Clearly much is left to the judgment of the trial court."

Three physicians, all of whom were competent and straightforward, were the only witnesses. They fixed the impaired ability at 25 per cent. The injured man was before them, and they as witnesses described his injuries and gave their opinions. They could not conclude the commission by their testimony. Whether the physicians have a standard by which they determine the extent of permanent partial disability does not appear; but in any event the statute does not prescribe a rule or method of determining the extent of disability. It is left to the judgment of the trier of fact. The testimony of physicians is useful. They may be helpful in estimating the functional impairment; and a standard of measurement of disability which they adopt, if any, may be useful. But the amount of disability is a question of ultimate fact for the commission. There really is no question of this. Many factors may enter into its determination. A good discussion is had in Globe

Ind. Co. v. Industrial Comm. 67 Colo. 526, 186 P. 522. And see Peabody Coal Co. v. Industrial Comm. 289 Ill. 449, 124 N. E. 566; Kenwood Bridge Co. v. Stanley, 66 Ind. App. 563, 117 N. E. 657; Frankfort Gen. Ins. Co. v. Pillsbury, 173 Cal. 56, 159 P. 150; Foley v. Detroit United Railway, 190 Mich. 507, 157 N. W. 45.

The amount of permanent partial disability was for the commission, and its finding is sustained.

Order affirmed.