# ANNA C. METCALFE v. FIRST NATIONAL BANK OF MINNEAPOLIS AND ANOTHER.[1]

December 16, 1932.

No. 29,174.

*Snyder, Gale & Richards,* for relators.
*Orr, Stark, Kidder & Freeman* and *F. A. Duxbury,* for respondent.

HILTON, J.

Certiorari upon relation of the employer, First National Bank of Minneapolis, and Indemnity Insurance Company of North America, its insurer, to review a decision of the industrial commission awarding compensation.

On May 29, 1930, respondent suffered an accidental injury which admittedly arose out of and in the course of her employment as

[1]Reported in 246 N. W. 28.

clerk in the filing department of the bank. She had been employed by the bank for about 14 years. Relators voluntarily paid compensation for 25 weeks from the date of the accident to November 20, 1930, when compensation was discontinued. They also paid the necessary medical and hospital benefits up to that time.

On June 1, 1931, respondent's claim petition was filed with the commission. Hearings were had before a referee on August 4, September 29, and December 15, 1931. After the hearings before the referee and filing of his findings of fact and award of further compensation, but prior to relators' appeal to the commission, the relators, on January 20, 1932, paid respondent further compensation for an additional period of 25 weeks, being from November 20, 1930, to May 14, 1931.

The referee's decision was rendered on December 18, 1931, three days after the last hearing. In it, among other things, he found:

"That ever since said injury and as a result thereof the employe herein has been continually totally disabled and was still so totally disabled on December 15th, 1931, * * * and required further medical attention to cure and relieve her from the effects of said accidental injury."

It was further found that since November 20, 1930, the employe required further medical and hospital attention as a result of said injury, and that the cost thereof was $395 for medical services and $48.20 for hospital expenses, neither of which items has been paid. By the referee's decision it was determined that respondent was entitled to and was awarded compensation at the rate of $16.67 per week from May 29, 1930, to December 15, 1931, "and thereafter during her disability at such rate of compensation as her disability may warrant, in accordance with paragraphs (a) and/or (b) of G. S. 1923 (1 Mason, 1927) § 4274, less however such compensation as has heretofore been paid." The decision further required the relators to furnish respondent such further medical and hospital expenses as may be required to relieve her from the effects of such accidental injury, and that they pay the medical and hospital bills hereinbefore referred to.

An appeal was taken to the industrial commission, and after consideration by it on the record made before the referee the commission ordered that the decision of the referee "be and the same hereby is in all respects affirmed, and the findings and determination of said referee are hereby approved and adopted as the findings and determination of the commission." The writ of certiorari followed.

Respondent, aged 54 years, became a widow at the age of 34 years. She then had an only daughter four years old, who is still living with her. For some time they have made their home in a small kitchenette apartment in a Minneapolis hotel.

On the morning of May 29, 1930, while at work in the bank, respondent slipped and fell on a marble stair. The left side of her head above the ear struck the stair. There was a concussion of the brain, resulting in unconsciousness—its duration is in dispute. She was taken to a hospital, where X-rays of the head were taken. They proved negative. However, it developed and is conceded that there was a skull fracture. Her condition was so alarming that for some days there was doubt of her ultimate recovery. There is much conflict in the testimony relative to her condition and progress of recovery while in the hospital. After being in the hospital for 61 days she was taken in a car to the apartment. Then, and until the discontinuance of compensation, relators had a physician (an ear, nose, and throat specialist) treat her, and they paid therefor. After such discontinuance and prior to the last hearing she was cared for and treated by the same physician. In aid of the treatment he performed an operation on the nose and a tonsillectomy. The medical and hospital charges therefor are those included in the award.

Respondent and her daughter testified that during all the time since returning to their apartment the former had been totally disabled, had not been able to leave her room without assistance, and that on her various visits to the office of her physician it was necessary that she be aided and helped along by her daughter or some other person, not being able to make the trips by herself. This testimony was full and complete and is in no way contradicted. It

is corroborated to some extent by that of her physician. Briefly stated, the claim of disability is based upon deafness in her left ear, dizziness, extreme nervousness, continued pain and suffering in her head, and other ailments incident to the concussion and skull fracture. The medical testimony on behalf of relators strongly calls in question the genuineness of her claim and asserts that she is exaggerating her condition and even malingering. We cannot say on the record that the commission should have so found.

On October 29, 1930, relators had respondent examined by a recognized medical expert, who made a report to them on November 1, 1930. His report detailed various tests made and pointed out inconsistencies in respondent's verbal responses to inquiries made. His ultimate conclusion was that he did not think she would recover as long as her claim was pending. He examined her again on July 21, 1931, and testified at one of the hearings as to the result thereof. He stated that her inability to work had lasted for a year or more and attributed the chief factor as nervousness, recognizing that her difficulty in hearing remained to be considered, and stated that he did not know how much the hearing was injured. To much the same effect was the testimony of another of relators' physicians (the one who attended respondent at the hospital). He at first thought she would be disabled from six weeks to three months, later up to nine months, and his final conclusion was that the disabling effects had ceased at the expiration of one year following the accident. Following the testimony of the two physicians last referred to, the extra 25 weeks' compensation was paid.

The case from a medical standpoint was evidently an unusual one. The able physicians for relators could not, or found it difficult to, reconcile certain claims of respondent as to her condition with tests and observations made by them. Notwithstanding the unprecedented advance in medical science in recent years, it is not yet an exact one; more is to be and will be learned. Its earnest and conscientious devotees are continually making new and important discoveries and commendably discarding former theories found to be in error. Everything considered, the evidence as to respondent's

actual condition warranted the decision of the commission. Certain discrepancies in the evidence as to noncontrolling matters were for the consideration of the commission.

It will be of no benefit to the litigants or to the profession at large that a fuller recital of the evidence be made. It has been carefully examined. Even if the case were a close one and might have been decided either way, the award of the commission must be affirmed. We cannot say that the decision of the commission was manifestly contrary to the evidence. The rule in Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419, is controlling. That rule is:

"A finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived." See 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10426.

An attorney's fee of $75 is allowed in this court.

Affirmed.