CHARLES E. BENSON v. WINONA KNIGHTS OF COLUMBUS AND ANOTHER.[1]

October 27, 1933.

No. 29,483.

[1]Reported in 250 N. W. 673.

W. C. Fraser and Briggs, Weyl & Briggs, for relators.
Sexton, Mordaunt, Kennedy & Carroll, for respondent.

HILTON, Justice.

Certiorari to review an order of the industrial commission awarding compensation to an employe at the rate of $20 per week from October 21, 1930, and as long as his disability shall continue, not exceeding the total sum of $10,000, less compensation theretofore paid, and in addition such further medical, surgical, and hospital care as may reasonably be necessary.

On December 31, 1924, respondent met with an accident which arose out of and in the course of his employment. He was then receiving wages in the sum of $36.92 per week under a Minnesota contract of hire. The employer and insurer paid him at the rate of $20 a week for a period of 300 weeks (the maximum for disability other than for permanent total disability. 1 Mason Minn. St. 1927, § 4274). There were paid also large sums for hospital, medical, and miscellaneous expenses.

The finding of the commission was "that as a further result of said accidental injury said employe has become totally and permanently disabled from work." There is here involved 1 Mason Minn. St. 1927, § 4274(e), which relates to the question of permanent total disability. It reads as follows:

"The total and permanent loss of the sight of both eyes or the loss of both arms at the shoulder, or the loss of both legs so close to the hips that no effective artificial members can be used, or complete and permanent paralysis, or total and permanent loss of mental faculties, or any other injury which totally incapacitates the employe from working at an occupation which brings him an income, shall constitute total disability."

It is conceded that respondent sustained none of the specific injuries or disabilities mentioned above. His claim is based upon the

italicized portion thereof. In State ex rel. Casualty Co. v. District Court, 133 Minn. 439, 441, 158 N. W. 700, 701, it is stated, referring to the above statute:

"The statute itself does not define the words 'permanent total disability,' although section 13, subdivision e, c. 467, p. 680, Laws 1913 (G. S. 1913, § 8207, subd. e), provides that certain injuries shall constitute permanent disability. There are, however, many other injuries which may result in permanently and totally disabling a man. Those set forth in the statute are not intended to be exclusive. Cases must be passed upon as they arise, and no hard and fast rule can be formulated so as to include them all. What is permanent total disability is largely a question of fact, and must depend upon the circumstances of each particular case. The statute itself is highly remedial in its nature. It should be liberally construed and liberally applied to accomplish the beneficial purposes intended and courts should guard against a narrow construction."

The rule consistently followed by this and most courts is that it will not disturb a finding of the commission upon a question of fact when from the evidence and the inferences which may be legitimately drawn therefrom reasonable minds can draw a conclusion in harmony with that of the commission. Brameld v. Albert Dickinson Co. 186 Minn. 89, 242 N. W. 465; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10426, and cases cited.

Respondent, a married man, both before and during his employment with relator had been engaged in varied kinds of manual labor, considerable of it heavy work. He had only a sixth grade education. His injury resulted from his falling a distance of over 35 feet and striking the frozen ground while in a standing position. The injuries consisted of a fracture of the second lumbar vertebra with a forward displacement of the first lumbar vertebra and a comminuted fracture of the inner condyle of the left ankle and forward displacement of the astragalus (ankle bone). While at the hospital a laminectomy operation was performed. The posterior portions of the twelfth dorsal and first, second, third, and fourth

lumbars were removed, and a number of nerves or filaments of the spinal cord were found to be severed. After the operation the spinal cord was left exposed and covered over with soft tissue; a cast was applied to the left ankle. There was at first a paralysis from the lumbar region down, involving both legs, and it was three or four weeks before any muscular response of the legs could be obtained. He was confined to the hospital for five months and four days. He was unable to walk when he was discharged from the hospital and, with a body brace, stayed in a wheel chair for about two months. Thereafter he got about with the aid of two crutches for about two months, then resorted to the use of two canes for about one month, and has been using a cane ever since. He cannot sit in one position for more than an hour and cannot remain standing very long; he has only partial control of the action of his bowels and has no feeling or sensation in urinating.

In December, 1927, respondent commenced doing some picture-framing work for a personal friend, who stated that he employed him as an act of charity or friendship. Respondent could not frame heavy pictures without assistance. His picture framing work was done with great difficulty and pain and with frequent cessations. During the three years following 1927 he earned $270 while at this work, an average of less than $1.75 a week. He was forced to discontinue it on account of his legs and back. Even when not working, his pains continually became more severe.

In the testimony of physicians in behalf of respondent comprehensive statements were made relative to his condition, his inability to engage in a gainful occupation, which need not here be detailed. They convincingly support the commission's finding, as does also the testimony of respondent and his lay witness. Medical experts on behalf of relator conceded that he would not be able to do work other than such as could be done with his upper extremities—sitting on a chair or bench and working with his hands. It was further stated by them that for many occupations there was a permanent and total disability; that in some occupations he could work, but that the extent and duration thereof would be indefinite. All physicians agreed that he could not do any ordinary labor or

heavy work, and that as far as doing such work was concerned respondent's legs would not be an asset to him. A physical examination of respondent made by the attending physician in February, 1932, a few months before the hearing, disclosed, in the opinion of the physician, a decrease of about 80 or 90 per cent in the flexibility of respondent's spine forward and backward. The physician also testified that in recent years respondent's condition has progressively become worse and will so continue. At the time of the hearing respondent had total paralysis of the left leg and foot and some impairment of the right leg.

It will serve no useful purpose to make further comment. There was clearly nothing but a fact issue involved. The industrial commission, on the evidence, was justified in finding as it did. For all practical purposes respondent's disability was permanent and total. A different holding would be entirely foreign to the oft declared purpose and intent of the workmen's compensation act. This conclusion is in harmony with holdings in other states, some of which, however, in their statements go further than we are required to in this case. See Moore v. Peet Brothers Mfg. Co. 99 Kan. 443, 162 P. 295; Employers L. A. Corp. Ltd. v. Williams (Tex. Civ. App.) 293 S. W. 210; Consolidated Coal Co. v. Crislip, 217 Ky. 371, 289 S. W. 270; New York Ind. Co. v. Industrial Comm. 86 Colo. 364, 281 P. 740; Roller v. Warren, 98 Vt. 514, 129 A. 168; McDonald v. Industrial Comm. 165 Wis. 372, 162 N. W. 345; Spring Valley Coal Co. v. Industrial Comm. 309 Ill. 215, 140 N. E. 858; Joliet & E. T. Co. v. Industrial Comm. 299 Ill. 517, 132 N. E. 794.

Affirmed.