# ANNA KRUCHOWSKI v. SWIFT & COMPANY AND ANOTHER.[1]

January 7, 1938.

No. 31,419.

*Reynolds & McLeod,* for relators.
*Lewis E. Lohmann,* for respondent.

PETERSON, JUSTICE.

*Certiorari* to the industrial commission to review a decision finding temporary total disability and awarding compensation therefor.

Respondent sustained a compensable injury while in the employ of Swift & Company. She received some medical care from the company and was paid compensation for 65 weeks for temporary partial (20 per cent) disability. By petition to the industrial commission she sought additional compensation for temporary total disability. At the first hearing the referee disallowed further compensation. On appeal, the commission ordered a rehearing, which resulted in a finding of total disability for 219 weeks and four days, and an award for compensation and medical expenses. The findings

[1]Reported in 277 N. W. 15.

and award were adopted by the commission. Relators contend that the finding of temporary total disability is unwarranted by the evidence and that respondent, with full knowledge of her condition, failed to report it to the commission or to her employer and failed to avail herself of the services of a doctor furnished by the company, thereby contributing to and prolonging the period of her disability.

On February 19, 1932, respondent, while employed dressing and packing meat, was injured by falling down a flight of stairs. The patella or kneecap of her right leg was severely bruised. From that date until May, 1933, she was treated by the company's doctors, first by Dr. Ernest, then by Dr. Lowe, who diagnosed the trouble as calcified bursitis (an inflamed saclike formation), which he removed by an operation. Later she returned to Dr. Ernest, who discharged her as cured in May, 1933. Then she took treatments from her own doctors, one Dr. Ely, who administered lamp treatments, and in February, 1934, she went to see a Dr. Henry, who examined her knee but did not at that time determine just what the trouble was. In November, 1935, she again went to Dr. Henry, who found that an "area of tenderness on the upper margin of her scar was more definite" and that she had "a neuroma or an enlargement of one of the sensory nerve ends." He suggested an operation, which he performed on March 25, 1936, cutting out the neuroma and repairing a defect in the capsule of the knee. Respondent was discharged from the hospital on April 8, but the wound did not completely heal until May 8.

The referee found that respondent was totally disabled from February 19, 1932, to May 11, 1936, and allowed compensation for that period, less the amount already paid by relators and excepting three weeks during which respondent had worked and sustained no wage loss.

■ The first contention of relators is that the finding of temporary total disability cannot stand against the testimony of Drs. Lowe, Ernest, and Henry, who were the company's doctors. They testified that respondent was only partially—20 per cent—disabled. Their estimate of disability is based principally upon loss of flexion of

the knee, although they state that they made some allowance for pain. Dr. Lowe, however, stated that he did not know how much pain she had. Dr. Henry in discussing the effects of pain upon her knee said that she had an "exquisitely tender spot." Respondent's doctors testified that the pain caused by the neuroma was so intense as to disable her. Respondent's testimony shows that she weighs 185 pounds; that she suffered intense pain from the neuroma; that her leg swelled; that she was unable to do any work or engage in activities ordinarily engaged in by girls of her age; that she undertook employment as a waitress but was compelled to discontinue because of the intense pain which she suffered from pressure on her knee due to standing. There is nothing in the testimony for relators to rebut the testimony of respondent that from February, 1932, to May, 1936, the pain to her knee was so intense when any pressure was applied that she could not stand longer than an hour or two at the most. No reason appears why the testimony of the company's doctors should be conclusive. In Gurtin v. Overland-Knight Co. 179 Minn. 38, 39, 228 N. W. 169, speaking of the testimony of doctors, we said:

"They could not conclude the commission by their testimony. * * * The testimony of physicians is useful. They may be helpful in estimating the functional impairment; and a standard of measurement of disability which they adopt, if any, may be useful. But the amount of disability is a question of ultimate fact for the commission."

In this case it appears that the company doctors probably adopted an erroneous test for the measurement of disability. Their measurement was that of flexion. The other testimony in the case shows that the disability was principally due to pain caused by the neuroma, which in itself would be disabling without regard to loss of flexion. As their diagnosis of the trouble in the knee was contrary to the fact and as they were unaware of the true condition in the knee, their estimates of the extent of disability are correspondingly weakened. This, together with the contradiction by both lay and medical witnesses, made a fact question for the commission. The

extent of disability was a controverted question of fact upon which the commission made a finding supported by evidence, and the finding cannot be disturbed. Gurtin v. Overland-Knight Co. 179 Minn. 38, 228 N. W. 169; Rystedt v. Minneapolis-Moline Power Implement Co. 186 Minn. 185, 242 N. W. 623; Zitzman v. Macht, 187 Minn. 268, 245 N. W. 29; Metcalfe v. First Nat. Bank, 187 Minn. 485, 246 N. W. 28; Benson v. Winona Knights of Columbus, 189 Minn. 622, 250 N. W. 673; Furlong v. Northwestern Casket Co. 190 Minn. 552, 252 N. W. 656.

■ Relators contend that because, under 1 Mason Minn. St. 1927, § 4279, an employer is required to furnish medical treatment and care to an injured employe, for the reasonable expense of which he shall be liable if he fails to discharge this duty, a corresponding duty is imposed upon the employe to act reasonably and promptly in ascertaining his condition and procuring treatment so as not to contribute to or prolong the disability. They contend that respondent unnecessarily prolonged and contributed to her disability from February, 1934, to the early part of 1936 by failing to inform either relators or the commission of her condition and the necessity for medical care, although during all that time she was fully aware of the facts. It is sufficient to say that the facts do not sustain the contention. It is clear that Drs. Ernest and Lowe failed to discover respondent's trouble and that Dr. Henry did not discover it until November, 1935. The referee made no finding when respondent first learned that she had neuroma, but in the memorandum he states that she was not aware of it until early in 1936. The evidence tends to show that in November, 1935, Dr. Henry learned of it on the second examination, when he first suggested the operation which was performed in March, 1936. An operation was not performed sooner because respondent did not have the money with which to pay for it. Dr. Henry advised the commission of his finding shortly after the examination in November, 1935, the commission advised Mr. Ferguson, a representative of the employer, in February, 1936, and requested that he authorize another examination, which he did, respondent was sent back to Dr. Henry, and arrangements were made for the operation at the employer's ex-

pense. The record is replete with protests and requests by respondent, made to the doctors and attorneys for the employer during the entire period here in question that her knee was not responding to the treatment given, that the pain did not subside, and that she needed further treatment. There is nothing to show that respondent, despite her diligence in keeping under the care of doctors, had any knowledge that she had neuroma until November, 1935. There is no basis then for the claim that she failed to inform those concerned when she learned of her true ailment or that she refused to avail herself of offered medical care. It is not necessary to outline the duties of an employe in this regard further than to observe that the act provides that upon reasonable request by the employer the employe must submit to an examination by the employer's physician, and for the employe's refusal to comply with a reasonable request the commission may suspend compensation and no compensation shall be paid while he continues in such refusal. 1 Mason Minn. St. 1927, § 4283. This provision is of aid to the employer in discharging his duty to provide medical care, and in a situation where the examination revealed that the condition could be cured or relieved by care offered by the employer and unjustifiably refused by the employe, the employe's right to compensation would be subject to the rule that the employer is liable only for the disability proximately resulting from the accident and not for that proximately resulting from the conduct of the employe. Kill v. Industrial Comm. 160 Wis. 549, 152 N. W. 148, L. R. A. 1916A, 14; Consolidated Lead & Zinc Co. v. State Industrial Comm. 147 Okl. 83, 295 P. 210, 73 A. L. R. 1298; Joliet Motor Co. v. Industrial Board, 280 Ill. 148, 117 N. E. 423; 71 C. J. p. 639, § 394; ibid., p. 850, § 559; 28 R. C. L. p. 813, § 101; notes, 6 A. L. R. 1260; 18 A. L. R. 431; 73 A. L. R. 1303; 105 A. L. R. 1470.

Respondent is awarded an attorney's fee of $75.

Affirmed and writ discharged.

MR. JUSTICE STONE took no part in the consideration or decision of this case.