THOMAS UNGER v. BALKAN MINING COMPANY.

80 N. W. (2d) 846.

January 18, 1957—No. 36,959.

*Spellacy, Spellacy & Lano,* for relator.

*Nye, Montague, Sullivan, Atmore & McMillan* and *Richard H. Hastings,* for respondent.

FRANK T. GALLAGHER, JUDGE.

Certiorari to review a decision of the Industrial Commission. Relator, Thomas Unger, herein referred to as the employee, age 31 years at the time of the accident, was injured on September 18, 1951, while in the employ of respondent-employer, Balkan Mining Company.

Before injury the employee was classified as a heavy-duty mechanic in employer's truck shop. His work from time to time included lifting of blocking ties, with an estimated weight of 250 to 300 pounds, used for working underneath the trucks; also removing tires and lifting certain heavy mechanical equipment in connection with the repairing of trucks. According to the record, employee was lifting the hood from a truck at the time of the injury. The character and extent of his injury, as described in his petition for compensation, consisted of a "herniated intervertebral disc in the L5, S1 space on the left."

The employee has returned to the same employer at his former salary, but he testified that he is able to do only 50 percent of the work which his job requires.

The matter was heard before a referee of the Industrial Commission. At this hearing two doctors furnished the medical testimony concerning the estimated permanent effects of the injury upon the employee. One called in behalf of the employee was of the opinion that the latter's disability for ordinary labor would be 25 percent, and that for work of a heavy-duty mechanic he would suffer a 50-percent permanent partial disability. There was also lay testimony to that effect. The other doctor, called as a witness by the employer, testified that the employee did not show any evidence in particular of organic trouble so far as his examination was concerned. It did show, however, that the employee had a spinal fusion. After taking into consideration the complaint of pain and the employee's story that he was unable to perform work, the doctor was of the opinion that on the basis of the complaints and the fact that employee had been subjected to a laminectomy and spinal fusion the employee was in all probability disabled to a degree for doing heavy work and should

be granted permanent partial disability of from 20 to 25 percent. The doctor further testified that the basis for an estimate of disability of this type has to be made on the patient's member as a whole, not taking into consideration any specific work but on a basis of actual disability from all forms of work.

At the conclusion of the hearing, the referee made findings that the employee was employed by employer and that the employee sustained an accidental injury arising out of and in the course of his employment. The referee then determined the compensation award, which was composed of payments for temporary total disability, temporary partial disability, transportation and incidental expenses, and permanent partial disability.[1] A finding of a 25-percent permanent partial disability of the back furnished the basis for permanent partial disability payment. On appeal the referee's findings were adopted by the commission with the exception that the transportation and incidental expenses were increased. The employee petitioned this court for a writ of certiorari to review this decision of the Industrial Commission.

The only legal question raised by the employee regarding the commission's determination is whether the amount of 25-percent permanent partial disability to the employee's back should be determined by comparing the functional disability of his back with that of the back of a "normal man" for "all forms of work" or should it be determined by the percentage of loss of use or industrial disability of his back in his own occupation. In other words, did the commission correctly apply M. S. A. 176.101, subd. 3(39), in determining that the medical testimony in the instant case indicated that the employee had sustained a 25-percent permanent partial disability to his back.

While the terms "functional disability" and "industrial disability" are not too common in the law, the simple distinction seems generally to be that the test of functional disability is to determine to what extent the injury or percentage of disability of the employee compares with that of a normal, whole man. On the other hand, the

---

[1]The record shows that the employee has already received substantially all of the amount.

test of industrial disability is to determine to what extent the injury impaired the employee in the performance of his particular occupation.

The employee argues that the terms of the Workmen's Compensation Act demand the test of industrial disability to determine permanent partial disability in the case of a back injury. He further contends that in this case the only testimony establishing disability on that basis placed the percentage of disability at 50 percent, thus the commission had no basis for a finding of 25-percent disability.

M. S. A. 176.101, subd. 3, provides for compensation in cases of permanent partial disability. Subsections (1) to (37) provide for compensation for the loss of members of the body, as for example:

"(1) For the loss of a thumb, 66 2/3 percent of the daily wage at the time of injury during 65 weeks;"

It can be seen that these subsections make no provision for payment to be based upon or affected by the occupation in which the injured person was engaged at the time of injury.

Subsection (42) provides for compensation for less than total loss of a member:

"(42) In cases of permanent partial disability due to injury to a member, resulting in less than total loss of the member, not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss of the member which the extent of the injury to the member bears to its total loss;"

Subsection (39) provides as follows:

"(39) For permanent partial disability resulting from injury to the back, 66 2/3 percent of the daily wage at the time of injury for that proportion of 330 weeks which is represented by the percentage of such permanent partial disability as is determined from competent testimony adduced at a hearing before a referee, a commissioner, or the commission;"

A person cannot lose his back as he can members such as a thumb, foot, hand, etc., enumerated in subsections (1) to (37). Thus, while

subsection (42) provides the method of figuring compensation for less than total loss of the members enumerated in subsections (1) to (37), subsection (39) provides such method in the case of a back injury.

Although the method of determining the percentage of disability in subsections (39) and (42) is not definitely outlined, it is quite obvious that, if occupation at time of injury is not a factor in determining compensation in subsections (1) to (37), such occupation should not be a factor in determining awards under subsections (39) and (42).

Our court in construing what is now subsection (42) has recognized the difficulty of determining the extent of the injury as compared with total loss and has said, "Clearly much is left to the judgment of the trial court." State ex rel. Globe Ind. Co. v. District Court, 136 Minn. 147, 150, 161 N. W. 391, 392. In Gurtin v. Overland-Knight Co. 179 Minn. 38, 228 N. W. 169, this court upheld the commission's finding of 50-percent permanent partial disability for injury to a leg when three doctors, the only witnesses, testified that the injury constituted a 25-percent disability. The court recognized that the statements of physicians estimating functional impairment are helpful, but said that, since the statute provides no rule or method of determining the exact disability and the extent of disability is a question of ultimate fact, the commission is not bound by doctors' testimony on extent of permanent partial disability. The court added, however, that many factors may enter into the determination of the extent of disability. No case has held that one of the factors which may be considered is the occupation at the time of injury. Rather, these factors may be such as a consideration of pain which accompanies normal use of the member and therefore restricts the person's ability to work. Kruchowski v. Swift & Co. 201 Minn. 557, 559, 277 N. W. 15, 17. For a further reference determining the extent of injury by relation to the "normal use," see Chiovitte v. Zenith Furnace Co. 148 Minn. 277, 280, 181 N. W. 643, 644.

Thus, in all cases where our court has discussed the percentage of disability, the approach has been that which we here consider as the

apparent intent of the legislature, namely, that the extent of injury or percentage of disability is the impairment which results to the particular person in comparison with or in contrast to the normal, whole man. The purpose of the legislature in enacting § 176.101, subd. 3, as it now reads may very well have been to avoid the problem which the employee's contention would pose, namely, that of determining each loss, or partial loss, of a thumb, etc., on the basis of what the thumb or member was worth to the employee in his particular occupation. At the same time, individual differences are taken into account by providing for use of the daily wage as a part of the formula used to determine the award.

Further, if the loss or partial loss of a member should result in an employee's not being able to engage in remunerative work, he may be eligible for total permanent disability. Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338.

Therefore, it is our opinion that the legislature did not intend industrial disability to be a test of the extent of permanent partial disability in subsection (39), a view apparently taken by our court, as cited above, regarding the analagous subsection (42). It follows that the commission was not in error in this case in using functional disability, as it apparently did, as a test in determining a 25-percent permanent partial disability of the back. There was testimony, as the employee admits, sufficient to support a finding of 25-percent loss of normal function of the back. It was a fact issue for the commission and its decision is affirmed.

Affirmed.