LLOYD NELSON v. FRED KRAUSE AND ANOTHER.[1]

October 29, 1937.

No. 31,336.

[1]Reported in 275 N. W. 624.

*J. Frank Boyles,* for relators.
*John A. Goldie* and *Samuel I. Sigal,* for respondent.

HOLT, JUSTICE.

*Certiorari* to review an order of the industrial commission.

On May 22, 1936, while ejecting a disorderly person from his employer's night club, respondent reeived a knife cut on the side of his face. The wound was treated by a doctor. There was temporary total disability for one week and four days but no subsequent disability. On respondent's petition for compensation it was found "that by reason of said injury said employe has been permanently disfigured, materially affecting his employability in the employment in which he was injured or other employment for which he was then qualified, and that such disfigurement in degree reaches the maximum amount." Accordingly, in virtue of 1 Mason Minn. St. 1927, § 4274(c)(38), he was awarded $13.60 per week for 75 weeks for disfigurement and also for temporary disability and doctors' fees. Payments were made pursuant to the award. On November 19, 1936, the employer requested respondent to present himself at Dr. Harvey Nelson's office in Minneapolis, in which city respondent resided, for examination. Respondent refused. Thereupon relators petitioned the industrial commission for an order directing respondent to submit himself for examination. The petition was denied, and this writ was issued.

Respondent's motion to dismiss for lack of a proper bond must be denied. It appears that a bond fixed and approved by the commission was filed. 2 Mason Minn. St. 1927, § 9499, is not applicable

to the bonds required on *certiorari* issued to the industrial commission. Such bonds are fixed and approved by the commission. Section 4320 gives this court jurisdiction of the compensation proceeding upon the filing with the commission of the bond fixed and approved by it and the payment to its secretary of ten dollars to be transmitted to the clerk of this court for his fees.

The sole question for decision is: Did the commission act arbitrarily and contrary to law in refusing to order respondent to submit to an examination by relators' doctor? Relators predicate their right to medical examination by a doctor of their choice under this provision of 1 Mason Minn. St. 1927, § 4283(1):

"The injured employe must submit himself to examination by the employer's physician, if requested by the employer, and at reasonable times thereafter upon the employer's request. The employe shall be entitled upon request to have his own physician present at any such examination. Each party shall defray the cost of his own physician."

Even if it be admitted that before any compensation application for accidental injury may be heard the employe, upon the employer's request, must submit to an examination by the employer's physician, still it is clear that, when the commission has taken jurisdiction and made an award, the employe may be required to submit to further examinations only at reasonable times thereafter. What are reasonable times is for the commission to determine. It cannot be left to the will or caprice of either employe or employer. Hence the judgment and discretion of the commission must decide the matter when the parties differ. Subdivision (3) of the same section provides the procedure, it seems to us, for enforcing the right of the employer to have the employe submit to an examination by the employer's physician. It reads:

"If the injured employe refuses to comply with any reasonable request for examination, his right to compensation may be suspended by order of the Commissioner and, in such case, no compensation shall be paid while he continues in such refusal."

The procedure, however, is for the commission. In the instant case the commission entertained relators' petition for an order directing respondent to submit himself to the physician selected by relators for examination. We fail to find that the denial of the petition was arbitrary or in disregard of the provision of the statute above quoted. No doubt the examination was desired in order to be able to make an application to the commission to modify or discontinue the compensation awarded. The petition alleges on information and belief that respondent's condition had changed for the better since the award. Upon the record before the commission, the necessity of an examination of respondent by a doctor might well be found not to exist. The conclusion could be reached that anyone who saw respondent's face at the time of hearing his application for compensation could now by merely calling on him in daytime and looking at the scar determine whether there had been any marked change for the better. It is somewhat different where compensation has been awarded on account of disability to work, where a physical examination by a competent medical expert might be needful in order to ascertain whether there has been a substantial change in the condition of the employe since award. In the instant case what is unpaid of the award is for disfigurement only. Other matters might also be taken into account in passing on an application of this sort, such as the amount of the award that is sought to be changed, the likelihood of any change with the prior proceedings before the commission, the expense and trouble connected with another hearing. In short, conceding that the order is subject to review as other than an administrative order, we think the commission properly exercised their judgment and discretion in the making thereof, and we cannot hold it an arbitrary denial of a clear right given the employer by subd. (1) of said § 4283. Relators at the original hearing, about two and a half months after the accident, contested the right to an award for disfigurement. Some two months after the award they sought a rehearing, not on the ground that there had been an improvement of the disfigurement, but on the ground that respondent, previous to the injury, had been engaged in other occupations than as salesman. We think the com-

mission had a right to consider the opportunity relators had had of observing the injury and litigating its effect, the improbability of such a change in the disfigurement as would lead to a reduction or discontinuance of the compensation awarded, and also that if any such change had occurred any ordinary person could ascertain that fact without the expense and trouble of respondent presenting himself to a medical expert.

The writ is quashed, and respondent may tax $50 as attorneys' fees.

