DONALD W. HOLLAND v. INDEPENDENT
SCHOOL DISTRICT NO. 332 AND ANOTHER.

144 N. W. (2d) 49.

July 8, 1966—No. 39,875.

57, 202 N. W. 54; Standard Surety & Cas. Co. v. Olson (8 Cir.) 150 F. (2d) 385. See, also, Annotation, 71 A. L. R. 1279.

*Hansen & Hazen* and *Lawrence Hazen,* for relators.

*Robert W. Nyquist, Ryan, Kain, Mangan, Westphal & Kressel,* and *William P. Westphal,* for respondent.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding the employee compensation for permanent total disability.

For many years prior to 1960, Donald W. Holland suffered an impairment of vision in his right eye as the result of a childhood illness. Surgery to repair this condition had been unsuccessful and the visual acuity readings for the eye have remained generally between 20/200 and 20/400, both corrected and uncorrected.

On June 23, 1960, a piece of wire pierced his left eye. This accident was employment-related. A cataract developed limiting vision of the left eye. A petition for compensation was filed and the matter was assigned for hearing before a referee of the Industrial Commission.

Relators conceded liability for full compensation for the healing period[1] from June 23, 1960, through October 31, 1960, and for the permanent partial disability[2] resulting from a 100-percent loss in the uncorrected vision in the left eye. Relators contested the referee's finding that the combination of the injury to the left eye with the preexisting ab-

---

[1] See, Minn. St. 176.101, subd. 1.

[2] See, Minn. St. 176.101, subd. 3(21, 41).

sence of vision in the right eye rendered Holland permanently totally disabled within the meaning of Minn. St. 176.101, subd. 5.

While relators' appeal to the Industrial Commission was pending, they requested Holland to submit to reexamination by their medical expert, Dr. Clyde M. Cabot, and upon Holland's refusal to do so, petitioned the commission for an order compelling such submission. A supporting affidavit by relators' counsel indicated that this reexamination was necessary to determine whether, in the light of the medical testimony, the cataract in the left eye had now become so bad as to make it unreasonable for Holland to continue to refuse to undergo corrective surgery. This petition was never ruled upon except by the appointment of a neutral physician.

On December 20, 1963, still prior to a hearing by the commission on the appeal, relators applied to the commission for an opportunity to take additional testimony. An accompanying affidavit by relators' counsel indicated that this testimony would concern the physical activities of Holland as observed by several persons during the period following the hearing before the referee. This application was not granted. In response to it, however, the commission ordered the examination of Holland by a neutral physician, Dr. George Tani, who made a report of his examination and was subject to cross-examination by both parties.

The commission awarded Holland compensation for permanent total disability from and after June 23, 1960, less amounts already paid. In its opinion the commission indicated that this decision was required because of (a) the medical testimony as to the visual acuity of both the right and left eyes, which was not substantially correctable, was extremely poor in the peripheral field, and, in the case of the left eye, was constantly deteriorating; and (b) the testimony regarding the inability of Holland to do work requiring any reasonable degree of eyesight.

Relators contend that the decision of the commission is erroneous because:

(1) The evidence is insufficient to support a finding of permanent total disability.

(2) The commission deprived relators of a full and fair hearing by

failing (a) to compel the employee to submit to reexamination by Dr. Cabot, and (b) to permit relators to take additional testimony regarding employee's activities.

### Permanent total disability

■ The finding of total disability could be supported, under Minn. St. 176.101, subd. 5, by evidence of either (a) "[t]he total and permanent loss of the sight of both eyes," or (b) "any other injury which totally incapacitates the employee from working at an occupation which brings him an income."

We think that the evidence is sufficient to support a finding that the injury totally incapacitated Holland from working at an occupation that brings him an income. In Berg v. Sadler, 235 Minn. 214, 219, 50 N. W. (2d) 266, 269, the court noted that this definition of total disability did not require that the person be unable to perform any part of an occupation.

"* * * [H]e may be regarded as totally permanently disabled if he cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity."

The evidence includes detailed testimony by Holland as to his inability to perform various physical functions required by the work he is qualified to do. He has made an effort to obtain employment but has been unable to do so except for occasional part-time jobs of little significance.

Dr. Walter K. Haven, the treating physician, testified that Holland could not do the type of work he had done prior to the injury because it required more vision than he has. Dr. Haven indicated that Holland would not be suitable for any manual labor and characterized him as an "industrial hazard" because of his eyesight. In addition, an employee of the State Employment Service office testified as to the unavailability of gainful employment in that area for a man in Holland's condition.

The only evidence to the contrary is that of Dr. Cabot to the effect that in his experience people with the same visual acuity as Holland's had been able to carry on gainful work.

In so far as the total-loss-of-sight category of total disability is concerned, the evidence offers less support.

While only uncorrected visual acuity can be considered when determining permanent *partial* disability,[3] we have held that corrected vision may also be considered when assessing permanent *total* disability.[4]

The consensus of the medical opinions in evidence is that there is a total loss of sight in the right eye, both corrected and uncorrected, and almost total loss of uncorrected sight in the left eye. Dr. Walter K. Haven, the treating physician, found that the corrected visual acuity in the left eye progressively diminished from 20/30 minus 2 to 20/100 between July 1960 and June 1962. Dr. John Henderson, a specialist from the Mayo Clinic, whose opinion was sought by Dr. Haven, reported a corrected vision reading of 20/50 in April 1961. Dr. Tani, the neutral physician, reported a reading for corrected vision of 20/100 based upon an examination made in July 1964. Dr. Cabot, examining Holland for relators, found that corrected vision was 20/60 plus 2 in February 1961.

This evidence was perhaps not adequate to prove total loss of sight. We think, however, that the commission could have found that this evidence was corroborative of a finding of total incapacity to work at an occupation that brings an income. Although in the Foster and Yureko cases[5] we held that because of the substantial correction available, a finding of total disability was not required, we do not think that the commission abused its discretion here in holding that evidence of a less significant correction together with evidence of Holland's inability to engage in gainful employment supported an award for permanent total disability.

### Further hearing

■ (a) *Medical Examination.* Under § 176.155 the injured employee must submit to examination by the employer's physician at reasonable times upon the employer's request.

While no reason has been given for the commission's refusal to compel the examination and while the request was not unreasonable, it would

---

[3] See, Butch v. Shaver, 150 Minn. 94, 184 N. W. 572, and Livingston v. St. Paul Hydraulic Hoist Co. 203 Minn. 62, 279 N. W. 829.

[4] See, Foster v. Schmahl, 197 Minn. 602, 268 N. W. 631, and Yureko v. Prospect Foundry Co. 262 Minn. 480, 115 N. W. (2d) 477.

[5] See footnote 4.

seem that compelling such an examination after the referee's decision and pending an appeal would involve the discretion of the commission. In Nelson v. Krause, 201 Minn. 123, 275 N. W. 624, the court held that the commission did not abuse its discretion in refusing to compel an examination after the referee's award had been made where it determined that such an examination was not necessary.

Here, the commission did not abuse its discretion in refusing to compel examination by relator's physician where instead it ordered an examination by a neutral physician who was made available to both parties.

(b) *Additional Evidence*. Under § 176.421, subd. 6(2), the commission, on appeal from a decision of a referee, may hear other evidence. There is nothing in the statute that makes it mandatory for the commission to hear additional testimony, but instead it is vested with discretion in that regard.

Rule 26(a), Rules of Practice of the Industrial Commission, outlines the procedure to be followed in seeking a hearing for additional evidence before the commission. Again, it places no obligation upon the commission to grant a hearing in all cases.

While it might have been preferable for the commission to accept the proffered testimony, we are not prepared to say that its refusal to do so is an abuse of discretion, particularly since it can at any time in the future consider a change in circumstances pursuant to a motion to modify the award.[6]

Respondent is allowed $250 attorneys' fees in supreme court.

Affirmed.

---

[6] See, Minn. St. 176.461.