Todd C. **ALLAN**, Respondent,

v.

R.D. **OFFUTT CO.**, self-insured

and

**Gallagher Bassett Services, Inc., Relator.**

No. A14–1555.

Supreme Court of Minnesota.

Aug. 31, 2015.

Jeffrey R. Hannig, Hannig Law Office, P.A., Fargo, ND, for respondent.

George W. Kuehner, Allison A. Lindevig, Jardine, Logan & O'Brien, PLLP, Lake Elmo, MN, for relators.

Sean M. Quinn, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, MN, for amicus curiae Minnesota Association for Justice.

Jeffrey J. Lindquist, Pustorino, Tilton, Parrington & Lindquist, PLLC, Minneapolis, MN, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

ANDERSON, Justice.

This dispute presents the question of whether a prior disability that does not affect an employee's ability to secure employment may be considered when determining whether the employee is eligible for permanent-total-disability benefits under Minn.Stat. § 176.101, subd. 5(2) (2014). The Workers' Compensation Court of Appeals (WCCA) concluded that, when determining eligibility for permanent-total-disability benefits, any disability may contribute to the employee's permanent-partial-disability rating, regardless of whether that disability causes the employee to be unable to secure employment. We reverse and remand for proceedings consistent with this opinion.

Respondent Todd C. Allan sustained a work-related injury to his lower back on September 28, 2010, while he was employed by relator R.D. Offutt Co. The steering rod broke on Allan's conveyor belt, which caused him to fly backwards,

land on his back, and hit a tire with his left shoulder. An MRI revealed degenerative disc disease caused by the fall, and Allan was restricted from performing many labor-related activities. Allan was 48 years old at the time of the injury.

Allan filed a petition seeking permanent-total-disability benefits in March 2013. Based on his age at the time of the injury, Allan was required to demonstrate "at least a 17 percent permanent-partial-disability rating of the whole body" in order to qualify for permanent-total-disability benefits. Minn.Stat. § 176.101, subd. 5(2)(i). To support his petition for benefits, Allan first relied on the September 28, 2010, back injury, which is assigned a permanent-partial-disability rating of 10 percent. *See* Minn. R. 5223.0390, subp. 3 (2013). Allan also relied on his non-work-related complete loss of teeth, which also is assigned a 10–percent rating. *See* Minn. R. 5223.0320, subp. 7 (2013). Relying on these two conditions, Allan claimed a permanent-partial-disability rating of 20 percent. Offutt opposed the petition for permanent-total-disability benefits, arguing that Allan's non-work-related loss of teeth cannot be considered in determining whether he has satisfied the 17–percent threshold in subdivision 5(2)(i).

The compensation judge concluded that Allan established a 10–percent permanent-partial-disability rating based on his September 2010 back injury. The judge did not consider Allan's complete loss of teeth in assessing his permanent-partial-disability whole-body rating, however, because the loss of teeth was fully corrected with dentures. Allan therefore did not satisfy the 17–percent threshold, and the compensation judge denied his petition for permanent-total-disability benefits.

Allan appealed and the WCCA reversed and remanded. *Allan v. RD Offutt Co.,* 2014 WL 4253405 (Minn. WCCA Aug. 12, 2014). It concluded that the correctable nature of Allan's loss of teeth was irrelevant to whether that condition could contribute to his permanent-partial-disability rating. *Id.* at *3. Relying on its own prior decision in *Metzger v. Turck, Inc.,* 59 Minn. Workers' Comp. Dec. 229 (WCCA 1999) (holding that a hysterectomy that did not affect employability could nevertheless contribute to the employee's permanent-partial-disability rating), the WCCA further concluded that Allan's loss of teeth need not affect his employability in order to contribute to his permanent-partial-disability rating. *Allan,* 2014 WL 4253405, at *3–4. Offutt and its insurer now seek review by our court.

### I.

The question presented here requires interpretation of the Workers' Compensation Act, and therefore presents a question of law that we review de novo. *Alcozer v. N. Country Food Bank,* 635 N.W.2d 695, 701 (Minn.2001). "Our objective in statutory interpretation is to effectuate the intent of the legislature, reading the statute as a whole." *Rohmiller v. Hart,* 811 N.W.2d 585, 589 (Minn.2012) (citing Minn.Stat. § 645.16 (2014)). In doing so, we "construe words and phrases according to their plain and ordinary meaning," and we "give effect to all of [the statute's] provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *Am. Family Ins. Gp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quoting *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn. 1999)). "When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect." *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001).

### A.

We begin by summarizing the statutory framework for permanent-total-

disability benefits. The Workers' Compensation Act provides compensation for "personal injury or death of an employee arising out of and in the course of employment." Minn. Stat. § 176.021, subd. 1 (2014); *see also* Minn.Stat. § 176.011, subd. 16 (2014) (" 'Personal injury' means any ... physical injury arising out of and in the course of employment....."). Disability benefits are awarded in accordance with the duration (temporary or permanent) and severity (partial or total) of the personal injury. *See* Minn.Stat. § 176.101 (2014). An injury that causes permanent total disability is compensable if the employee establishes:

> (1) the total and permanent loss of the sight of both eyes, the loss of both arms at the shoulder, the loss of both legs so close to the hips that no effective artificial members can be used, complete and permanent paralysis, total and permanent loss of mental faculties; or

> (2) any other injury which totally and permanently incapacitates the employee from working at an occupation which brings the employee an income....

Minn.Stat. § 176.101, subd. 5. Subdivision 5(1), which contains a group of injuries that presumptively establish a permanent total disability, is not at issue here. Allan relies instead on subdivision 5(2), which requires that an employee demonstrate a permanent-partial-disability rating of 13, 15, or 17 percent, depending on the employee's age and education at the time of the injury.[1] *Id.*, subd. 5(2)(i)-(iii).

> For purposes of [subdivision 5(2)], "totally and permanently incapacitated" means that the employee's physical disability *in combination with any one of item (i), (ii), or (iii) causes* the employ-

ee to be unable to secure anything more than sporadic employment resulting in an insubstantial income. Other factors not specified in item (i), (ii), or (iii), including the employee's age, education, training and experience, may only be considered in determining whether an employee is totally and permanently incapacitated after the employee meets the threshold criteria of item (i), (ii), or (iii).

*Id.*, subd. 5. The meaning of this final paragraph is the subject of this appeal.

### B.

We hold that Minn.Stat. § 176.101, subd. 5(2), unambiguously requires that disabilities that contribute to an employee's permanent-partial-disability rating must affect employability. Subdivision 5(2) provides that an employee is totally and permanently incapacitated if "the employee's physical disability in combination with [the applicable permanent-partial-disability rating] causes the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income." We construe words and phrases "according to rules of grammar and according to their most natural and common usage...." *ILHC of Eagan, LLC v. Cty. of Dakota,* 693 N.W.2d 412, 419 (Minn.2005) (quoting Minn.Stat. § 645.08 (2014)). "Combination" is defined as "the result or product of combining" or "a union or aggregate made by combining one thing with another." *Webster's Third New International Dictionary* 452 (1976). "Cause," in turn, means "a person, thing, fact, or condition that brings about an effect or that produces or calls forth a resultant action or state." *Id.* at 356. With these definitions in mind, the

---

1. The WCCA has held that non-work-related disabilities may contribute to the permanent-partial-disability rating. *Frankhauser v. Fabcon, Inc.,* 57 Minn. Workers' Comp. Dec. 250– 51 (WCCA), *aff'd without opinion,* 569 N.W.2d 533 (Minn.1997). Relators do not challenge this holding, and therefore we decline to address it.

phrase "in combination with … causes" means that the relevant aggregate factors must cause the employee to be unable to secure employment. Thus, subdivision 5(2) necessarily contains a causal nexus between employability and the work-related injury, *and* between employability and the disabilities that contribute to the permanent-partial-disability rating. "When the plain meaning of a statute is clear, a court must apply its plain language." *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 867 (Minn.2010).

Our conclusion is consistent with the overall context of the statute. Subdivision 5(2) contains two references to employability, both of which must be given effect. *See Schroedl,* 616 N.W.2d at 277. The first clause states that the work-related injury must "totally and permanently incapacitate[ ] the employee from working at an occupation which brings the employee an income." Minn.Stat. § 176.101, subd. 5(2). The definition of "totally and permanently incapacitated," in turn, contains a second reference to employability: it states that the "physical disability in combination with" the disabilities contributing to the permanent-partial-disability rating must "cause[ ] the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income." *Id.* If, as Allan and the dissent contend, the disabilities that contribute to the permanent-partial-disability rating are irrelevant to the employee's inability to secure an income, this second reference to employability would be meaningless. Put differently, any disability used to satisfy the applicable permanent-partial-disability rating must also affect employability in order to "give effect to all of [the statute's]

provisions," *Schroedl,* 616 N.W.2d at 277, in particular the provision that requires a causal effect on the employee's ability to "secure anything more than sporadic employment resulting in an insubstantial income," Minn. Stat. § 176.101, subd. 5(2).[2]

In addition, our conclusion conforms with the Legislature's consistency in tying the provision of permanent-total-disability benefits to employability. *See, e.g., Holland v. Indep. Sch. Dist. No. 332,* 274 Minn. 380, 384, 144 N.W.2d 49, 51–52 (1966) (holding that an employee's "inability to engage in gainful employment supported an award for permanent total disability"); *Yureko v. Prospect Foundry Co.,* 262 Minn. 480, 485, 115 N.W.2d 477, 481 (1962); *Unger v. Balkan Mining Co.,* 248 Minn. 510, 515, 80 N.W.2d 846, 849 (1957) ("[I]f the loss or partial loss of a member should result in an employee's not being able to engage in remunerative work, he may be eligible for total permanent disability."); *Berg v. Sadler,* 235 Minn. 214, 219, 50 N.W.2d 266, 270 (1951) (concluding that an employee who, due to a work-related injury, could only work in "[a]n intermittent and limited capacity" was not precluded from recovering permanent-total-disability benefits). In *Yureko,* for example, a work-related injury left an employee "industrially blind." 262 Minn. at 481–82, 115 N.W.2d at 478. The employee's eyesight was fully corrected with glasses, however, and he obtained similar employment after the injury. *Id.* at 482, 115 N.W.2d at 478–79. We concluded that the employee was not entitled to permanent-total-disability benefits because he did not suffer "total loss of sight of both eyes." *Id.* at 485, 115 N.W.2d at 481 (citing Minn.Stat. § 176.101, subd. 5 (1961)).[3] We noted, however, that

**2.** Although each of the disabilities must contribute to the inability to work, none must do so independently. The inquiry is whether, considered together in whatever measure, the

disabilities cause the employee to be unable to work.

**3.** At the time we decided *Yureko,* Minn.Stat. § 176.101, subd. 5 (1961), provided: "The

the employee may be entitled to additional benefits if his "ability to earn later diminishes into permanent total disability." *Id.* Thus, we acknowledged that the injury could warrant permanent-total-disability benefits in the future, *provided that it caused an inability to secure employment.*

*Yureko,* of course, considered a previous version of Minn.Stat. § 176.101, subd. 5, that did not require the employee to establish a permanent-partial-disability rating. *See* Act of May 25, 1995, ch. 231, art. 1, § 21, 1995 Minn. Laws 1977, 1990–91 (codified as amended at Minn.Stat. § 176.101, subd. 5(2) (2014)) (adding the permanent-partial-disability rating requirement for obtaining permanent-total-disability benefits). But, our case law demonstrates that we have consistently tied the award of permanent-total-disability benefits to an inability to earn an income. It is therefore not surprising that the Legislature, upon creating an additional requirement for obtaining permanent-total-disability benefits, would tie that requirement to employability as well.

## II.

Relying heavily on the WCCA's decision in *Metzger v. Turck, Inc.,* 59 Minn. Workers' Comp. Dec. 229 (WCCA 1999), Allan argues that subsequent amendments to the Workers' Compensation Act render our statutory interpretation in *Yureko* inapplicable to the current version of Minn. Stat. § 176.101, subd. 5(2). He notes that, in 1974, the Legislature amended Minn. Stat. § 176.021, subd. 3, to distinguish permanent-partial-disability benefits from other forms of compensation. The amendment provided that "[p]ermanent partial disability is payable for functional loss of use or impairment of function, permanent

total and permanent loss of the sight of both eyes, ... or any other injury which totally incapacitates the employee from working at

in nature, and payment therefore shall be separate, distinct, and in addition to payment for any other compensation." *See* Act of April 12, 1974, ch. 486, § 1, 1974 Minn. Laws 1230, 1231 (codified as amended at Minn.Stat. § 176.021, subd. 3 (2014)); *see also Tracy v. Streater/Litton Indus.,* 283 N.W.2d 909, 914 (Minn.1979) ("[T]he legislature has made impairment of function compensable for its own sake in the form of damages separate and distinct from wage loss."). When the Legislature amended Minn.Stat. § 176.101, subd. 5 again—to add the permanent-partial-disability rating requirement to the definition of permanent total disability—it did not amend the statement in Minn.Stat. § 176.021, subd. 3, that permanent-partial-disability benefits are "separate" and "distinct" from other benefits under the Workers' Compensation Act. Allan and the dissent assert that, because permanent-partial-disability benefits are "payable for functional loss" rather than for wage loss, any disability that contributes to a permanent-partial-disability rating need not separately cause or contribute to the wage loss occasioned by the work-related injury that led to the petition for benefits.

The interpretation of Minn.Stat. § 176.101, subd. 5(2) advanced by Allan and the dissent is unreasonable for several reasons. First, Minn.Stat. § 176.021, subd. 3, makes clear that only permanent-*partial*-disability benefits are "payable for functional loss of use or impairment of function." Compensation for any other disability, including permanent total disability, is contingent on the employee's inability to earn an income. *See id.* ("Liability ... for disability of a temporary total, temporary partial, and permanent total nature shall be considered as a con-

an occupation which brings him an income constitutes total disability."

tinuing product and part of the *employee's inability to earn or reduction in earning capacity due to injury....*" (emphasis added)); *see also* 1 Lex K. Larson, *Larson's Workers' Compensation* § 1.03[4], at 1–9 (rev. ed. 2015) ("In [workers'] compensation, unlike tort, the only injuries compensated for are those which either actually or presumptively produce disability and thereby presumably affect earning power."). The mere fact that permanent-partial-disability *benefits* are unconnected to an employee's earning capacity does not mean that an employee's permanent-partial-disability *rating* is similarly untethered to an ability to earn an income, when that rating is used to determine eligibility for permanent-total-disability benefits.

Second, both Allan and the dissent ignore the primary purpose of the Workers' Compensation Act, which is to "pay compensation in every case of personal injury or death of an employee *arising out of and in the course of employment.*" Minn. Stat. § 176.021, subd. 1 (emphasis added); *see also* 1 Larson, *supra*, at 1–1 ("Workers' compensation is a mechanism for providing cash-wage benefits and medical care to victims of work-connected injuries...."). Allan's proffered rule, which the dissent adopts, would require the workers' compensation judge—when determining eligibility for permanent-total-disability benefits—to consider disabilities that are wholly unconnected to employment and for which the employee is ineligible to receive workers' compensation.

Surely the Legislature did not intend such an expansive interpretation of the Workers' Compensation Act.

Finally, regardless of whether the provision of permanent-partial-disability benefits is tied to wage loss, the Legislature provided a different test for determining eligibility for permanent-total-disability benefits under Minn.Stat. § 176.101, subd. 5(2). That test clearly requires that any injury contributing to the employee's permanent partial disability rating must "cause[ ] the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income." *Id.* The Legislature gives no indication that the provision of permanent-total-disability benefits should be contingent upon mere "functional loss of use or impairment of function." We therefore reject Allan's argument, as well as the WCCA's reasoning in *Metzger*.[4]

### III.

We conclude that, for the purpose of determining whether an employee is eligible for permanent-total-disability benefits under Minn.Stat. § 176.101, subd. 5(2), a disability that contributes to the employee's permanent-partial-disability rating must affect the employee's ability "to secure anything more than sporadic employment resulting in an insubstantial income."[5] Because the WCCA did not decide whether Allan's loss of teeth affects his employability, we remand to

---

4. The dissent argues that we should give special deference to the long-standing decisions of the WCCA when, as here, those decisions are accompanied by legislative silence. Because we conclude that Minn.Stat. § 176.101, subd. 5(2) is clear and unambiguous, we need not address this issue. Whatever the level of deference, if any, that should be afforded to a long-standing regulatory decision coupled with legislative silence, it cannot overcome the clear and unambiguous text of the statute.

5. Because we reverse the decision of the WCCA, we need not decide whether the WCCA's interpretation of Minn.Stat. § 176.101, subd. 5, violated the Fourteenth Amendment to the U.S. Constitution or Article I, Section 2, of the Minnesota Constitution.

that court for further proceedings consistent with this opinion.

Reversed and remanded.

WRIGHT, Justice (dissenting).

The majority concludes that the language of Minn.Stat. § 176.101, subd. 5 (2014), not only requires that an employee seeking permanent-total-disability benefits meet the permanent-partial-disability rating threshold described in the statute, but also requires that the employee demonstrate that the permanent-partial-disability rating arise from conditions that affect employability. In reaching this conclusion, the majority ignores multiple reasonable interpretations of the statutory language of section 176.101, subdivision 5. In addition, the majority fails to consider the fundamental purpose of workers' compensation benefits, which is to provide compensation to workers injured on the job. Finally, the majority disregards past administrative interpretations of this statutory provision as well as the harmful effect of its chosen interpretation. For these reasons, I respectfully dissent.

I would affirm the WCCA's decision that the conditions giving rise to an employee's permanent-partial-disability rating need not affect the employee's ability to work in order to establish permanent total disability under Minn.Stat. § 176.101, subd. 5(2). And because Allan has met the applicable threshold requirement in subdivision 5(2), I would remand this matter to the compensation judge to determine whether Allan is permanently and totally disabled.

I.

Section 176.101, subdivision 5(2), is ambiguous. When interpreting a statute, we give words and phrases their plain and ordinary meaning. *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn. 2010). "If a statute has more than one

reasonable interpretation, then it is ambiguous and we may resort to the canons of statutory construction to determine its meaning." *State v. Nelson,* 842 N.W.2d 433, 436 (Minn.2014); *see also Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (stating that a statute is ambiguous when its language is subject to more than one reasonable interpretation). When read in context, the meaning of the phrase "in combination with" is subject to multiple reasonable meanings.

Subdivision 5(2) first defines "permanent total disability" as an injury that "totally and permanently incapacitates the employee from working at an occupation which brings the employee an income, provided that the employee must also meet the [applicable permanent-partial-disability rating threshold]." Minn. Stat. § 176.101, subd. 5(2). The statute then defines the phrase "totally and permanently incapacitated" to mean "that the employee's physical disability *in combination with* the [employee's permanent-partial-disability rating] causes the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income." *Id.* The majority concludes that the phrase "in combination with" requires the employee's physical disability *and* the employee's permanent-partial-disability rating *each* to cause, or contribute to, the employee's inability to secure more than sporadic employment. According to the majority's interpretation, both the physical disability *and* the employee's permanent-partial-disability rating must contribute to the employee's inability to secure employment. Indeed, this may be one plausible interpretation of "in combination with."

An equally reasonable interpretation of the phrase, however, is that the totality of the employee's physical disability and the employee's permanent-partial-disability

rating, considered *together, cause* the employee to be unable to secure employment. According to this reasonable interpretation, as long as an employee meets the applicable permanent-partial-disability rating threshold, with ratings from any source, and is unable to secure employment because of the physical disability on which the employee's workers' compensation claim is based, the employee is permanently and totally disabled. This interpretation of the statutory language, unlike the majority's interpretation, reflects that the permanent-partial-disability rating is not a measure of an employee's ability to secure employment. Rather, permanent-partial-disability ratings, throughout the Workers' Compensation Act, reflect an impairment of body parts, regardless of the effect of that impairment on employability. *See Moes v. City of St. Paul*, 402 N.W.2d 520, 526–28 (Minn.1987) ("Our decisions interpreting [Minn.Stat.] § 176.021, subd. 3, clearly indicate that permanent-partial-disability benefits are intended to compensate permanent loss or impairment of a bodily function, and is in no way dependent on any prerequisite showing of wage loss.").

Our conclusion in *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry* also recognized that the permanent-partial-disability rating thresholds in subdivision 5(2) are not directly related to employability. 735 N.W.2d 713, 725 (Minn.2007) (recognizing that the Legislature reasonably could have believed that employees with high permanent-partial-disability ratings are more likely to be permanently and totally disabled than employees with lower permanent-partial-disability ratings, even though the ratings "are poor determiners of impaired wage-earning capacity"). The majority completely ignores this interpretation and the concomitant ambiguity of the phrase "in combination with," asserting instead that a permanent-partial-disability rating should be tied to employability.

Contrary to the majority's assertion, the statute does not provide that a permanent-partial-disability rating, which is assigned based on a loss of *function*, should—in this single circumstance—reflect employability rather than loss of function.

Moreover, a "rating," as opposed to a condition, can neither cause nor contribute to an inability to secure employment. The rating simply demonstrates the degree of overall ("whole body") disability represented by the employee's condition, as assigned by the permanent-partial-disability schedule. Simply put, the rating is a number. The rating does not, as the majority forces it to do, *cause* an inability to secure employment.

The language of section 176.101, subdivision 5(2)—in particular the absence of clarity attributable to the phrase "in combination with" and the word "rating"—lends itself to two reasonable and plausible interpretations. Accordingly, I conclude, as did the WCCA in *Metzger v. Turck, Inc.*, 59 Minn. Workers' Comp. Dec. 229, 237 (WCCA 1999), that the statute is ambiguous.

## II.

Because section 176.101, subdivision 5(2), is ambiguous, I consider sources in addition to the plain text, such as the canons of statutory construction, to determine its meaning. *See Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 718 (Minn. 2014). Specifically, the purpose of the workers' compensation statute, the consequences of the majority's interpretation, and administrative interpretations of the statute inform this analysis. *See id.* (citing *Sevcik v. Comm'r of Taxation*, 257 Minn. 92, 103, 100 N.W.2d 678, 686–87 (1959) (stating that we may consider the purpose and objects of legislation to ascertain legislative intent)); *Citizens Advocating Re-*

*sponsible Dev. v. Kandiyohi Cty. Bd. of Comm'rs,* 713 N.W.2d 817, 828 (Minn.2006) (listing administrative interpretations as a factor used to ascertain legislative intent); *see also* Minn.Stat. § 645.16 (2014) (listing factors used to ascertain the intent of the Legislature).

We have described the "fundamental purpose" of the workers' compensation statute as "provid[ing] compensation to [workers] injured by accident while performing their work." *Corcoran v. P.G. Corcoran Co.,* 245 Minn. 258, 269, 71 N.W.2d 787, 795 (1955). To advance this purpose, in subdivision 5(2), the Legislature chose to permit an injured employee to rely on a permanent-partial-disability rating from any source, regardless of whether the conditions underlying the chosen rating affect employability. *See* Minn. Stat. § 176.101, subd. 5(2) (requiring that the "employee [have] at least a [17–percent] permanent partial disability rating of the whole body," but not specifying that the conditions supporting the rating must affect employability).

The majority's interpretation of the statute defeats this purpose. The majority asserts that its interpretation is consistent with the Legislature's decision to connect permanent-total-disability benefits to wage loss, citing *Holland v. Independent School District No. 332,* 274 Minn. 380, 384, 144 N.W.2d 49, 51–52 (1966), and *Yureko v. Prospect Foundry Co.,* 262 Minn. 480, 485, 115 N.W.2d 477, 481 (1962). Indeed, neither party contests, nor do I, that permanent-total-disability benefits are contingent on an employee's inability to secure employment. However, the majority's interpretation promises to result in the denial of permanent-total-disability benefits to employees who have been injured in the workplace, including employees who are unable to "work[ ] at an occupation which brings the employee an income." Minn.

Stat. § 176.101, subd. 5(2). By concluding that a permanent-partial-disability "rating" must cause or contribute to an employee's inability to secure employment, the majority denies workers' compensation benefits to the precise employees whom the Legislature intends the statute to benefit. For certain employees, the majority's interpretation will break the connection between the employee's inability to secure employment and permanent total disability. The majority's decision to narrow access to workers' compensation benefits to a greater extent than the text of the statute requires is an invitation that should be resolutely rejected.

The construction of subdivision 5(2) advanced here, as well as the holding of the WCCA, ensures that an employee who both is unable to secure employment because of a workplace injury *and* can demonstrate the requisite permanent-partial-disability rating, receives the intended compensation. It creates no additional risk that an employee who meets the permanent-partial-disability rating threshold but is able to secure employment will receive permanent-total-disability benefits in error. This is because an injured employee still must establish an inability "to secure anything more than sporadic employment resulting in an insubstantial income," based on the injury or based on the injury and the condition underlying the permanent-partial-disability rating relied on to demonstrate the requisite whole-body rating threshold. *Id.* Merely meeting the permanent-partial-disability rating threshold is not enough for an employee to be permanently and totally disabled. Here, for example, Allan still would need to establish that he is unable to secure employment because of his back injury after meeting the permanent-partial-disability rating threshold. This reasonable and plausible interpretation of the statute preserves the purpose of the workers' com-

pensation statute and, contrary to the majority's claims, maintains the connection between permanent total disability and wage loss.

The WCCA's longstanding application of section 176.101, subdivision 5, when viewed against a backdrop of legislative silence, also supports my interpretation. Of course, the WCCA's decisions are not binding authority for us. *Kloss v. E & H Earthmovers*, 472 N.W.2d 109, 113 (Minn. 1991). But the WCCA is an "agency in the executive branch," *Kline v. Berg Drywall, Inc.*, 685 N.W.2d 12, 23 (Minn.2004), and its members are "selected for their experience and expertise, and entrusted with deciding, in consistent and appropriate fashion, 'all questions of law and fact arising under the workers' compensation laws' brought to it on appeal," *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn.1984). As such, it is appropriate to give significant weight to the WCCA's decisions interpreting section 176.101, subdivision 5(2). "In ascertaining legislative intent[,] administrative interpretation of a statute may be considered and where, as here, it is of long standing, it is entitled to great respect and should not be disturbed except for very cogent reasons." *Farmers & Mechanics Sav. Bank of Minneapolis v. Dep't of Commerce, Sec. Div.*, 258 Minn. 99, 103, 102 N.W.2d 827, 830 (1960).

For more than 15 years, the WCCA has interpreted section 176.101 to permit an employee to demonstrate permanent-total-disability status by relying on a perma-

nent-partial-disability rating, regardless of whether the conditions underlying that rating affected the employee's employability. *Metzger*, 59 Minn. Workers' Comp. Dec. at 237. Although the majority contends that the Legislature did not intend "such an expansive interpretation" of the statute, the Legislature's 15–year silence speaks volumes. Since the WCCA decided *Metzger* in 1999, the Legislature has made no amendments that contradict *Metzger's* holding. During this same period, however, the Legislature has amended other parts of section 176.101 four times.[6] This ongoing legislative activity strongly suggests that, had the Legislature disagreed with the WCCA's application of subdivision 5(2), the Legislature would have amended the language to adopt the policy that the majority's narrow construction now forces onto the statute.

### III.

In sum, the majority ignores the manifest ambiguity of section 176.101, subdivision 5, when it concludes that a permanent-partial-disability rating must affect employability. In doing so, the majority avoids considering our canons of construction that support the opposite conclusion. Because Allan has met the threshold requirement under subdivision 5(2), the WCCA's decision should be affirmed. Therefore, I respectfully dissent.

PAGE, Justice (dissenting).

I join in the dissent of Justice Wright.

---

6. The Legislature amended section 176.101, subdivisions 1 (temporary total disability), 2a (permanent partial disability), and 8 (cessation of benefits) in 2000. Act of Apr. 27, 2000, ch. 447, §§ 10–12, 2000 Minn. Laws 1042, 1051–55 (codified at Minn.Stat. § 176.101 (2000)). It amended subdivision 1 again in 2008 and in 2013. Act of Apr. 30, 2008, ch. 250, § 3, 2008 Minn. Laws 666–68

(codified at Minn.Stat. § 176.101 (2008)); Act of May 16, 2013, ch. 70, § 5, 2013 Minn. Laws 362, 371–73 (codified at Minn.Stat. § 176.101 (2014)). And the Legislature amended subdivision 2a in 2009. Act of May 12, 2009, ch. 75, § 1, 2009 Minn. Laws 529, 530–31 (codified at Minn.Stat. § 176.101 (2014)).

LILLEHAUG, Justice (dissenting).

I join in the dissent of Justice Wright.