CHUTICH, Justice.
*259 Appellant Andrew Ellis initiated eviction proceedings against his tenant, John Doe, for nonpayment of rent.[1] The tenant raised a common-law habitability defense, asserting that Ellis had breached the covenants of habitability. The district court found for the tenant and ordered retroactive and prospective rent abatement until the habitability violations were fixed. The court of appeals affirmed the district court's decision.
Ellis now asks us to reverse, asserting that the tenant did not follow the procedures for a rent-escrow action under Minnesota Statutes section 504B.385 (2018), which require written notice to the landlord before initiating an action for breach of the covenants of habitability. We conclude that a tenant asserting a common-law habitability defense in an eviction proceeding is not required to follow the procedures for an action under the rent-escrow statute. Accordingly, we affirm the decision of the court of appeals.
FACTS
Ellis is the owner and landlord of a duplex in Minneapolis. The tenant rented a unit in the duplex in February 2016 under a written month-to-month lease. The apartment had ongoing repair issues, and the tenant later testified in an eviction action that he contacted Ellis about those issues "on several occasions"-enough times that Ellis got tired of him calling. He further testified that he sent Ellis "a letter in regards to the different issues that we had."
After five months passed without Ellis making repairs, the tenant called the city inspector. When the inspector came to inspect the apartment in October 2016, the tenant met with him and discussed several *260 issues, including damage to the bathroom floor, kitchen cabinets, and bedroom ceiling from a water leak; cracks in the walls; peeling paint; broken window seals; and windows that were painted or glued shut. While the inspector was there, the tenant and the inspector could hear an animal running through the ceiling and scratching at the walls. The tenant also pointed out the front door entrance to the duplex, which did not lock and barely closed. He showed the inspector the back stairs, which were held together by a cord, and the side rail on the front stairs, which was weakly attached to the stairs.
In October 2016, the city inspector sent Ellis a notice of ordinance code violations, which required Ellis to make numerous repairs within the next month. Specifically, the notice required Ellis to (1) repair the windows that were painted shut and the windows that would not stay open; (2) repair or replace the handrail for the front stairs; (3) repair the front entry door; (4) identify and fix the source of the moisture problem, as well as repair all water-damaged surfaces; (5) repair the peeling paint in the kitchen; (6) replace the non-functioning smoke and carbon monoxide detectors; (7) repair the rear exterior stairs, which were in unstable condition and lacked a useable handrail; (8) replace a torn window screen; and (9) replace two broken window panes and one missing pane.
In March 2017, Ellis filed an eviction action under Minnesota Statutes section 504B.291 (2018), alleging nonpayment of $3,581 in rent. The tenant acknowledged that he had withheld rent for the month of March and deposited the unpaid rent for the months of March and April 2017 with the court administrator. On March 20, 2017, the tenant filed an answer denying Ellis's allegations and raising the common-law defense of breach of the statutory covenants of habitability. See Minn. Stat. § 504B.161, subds. 1, 4 (2018).
The parties appeared before the housing court referee. Both parties submitted exhibits and testimony. Both parties also testified, and so did the tenant's mother. The referee found the testimony of the tenant and his mother to be more credible than Ellis's testimony. In evaluating Ellis's nonpayment-of-rent claim, the referee found that the tenant had actually overpaid his rent for 2016 and only owed rent in the amount of $67.64 as of February 2017.
The referee then turned to the tenant's habitability defense. Based on the tenant's testimony, the photographs of the unit offered as exhibits, and the city inspector's report, the court found that "the condition of the premises violated the statutory covenants of habitability." Although Ellis testified that he had addressed all of the issues in the city inspector's letter, the referee found Ellis's testimony "untrustworthy" and noted that he "was unable to answer very basic questions about the interactions of the parties." The referee found that the tenant was entitled to retroactive and prospective rent abatement in the amount of $250 per month until Ellis completed all outstanding repairs listed in the notice sent by the city.
Ellis sought district court review of the referee's decision, arguing that the referee committed legal error. In his motion, Ellis argued, among other things, that a tenant must give written notice to a landlord specifying any violations of the covenants of habitability, as required by the rent-escrow statute. See Minn. Stat. § 504B.385, subd. 1(c). The district court found that the tenant had offered ample evidence demonstrating that the covenants of habitability were violated, the tenant had provided notice of the violations, and the violations had not been corrected. The district court noted that the tenant testified *261 that he had sent Ellis a letter about the violations and further noted that the referee found the tenant's testimony to be "exceedingly more credible" than Ellis's testimony. Accordingly, the district court denied Ellis's motion and affirmed the referee's order.
Ellis appealed. The question before the court of appeals was whether the tenant was required to follow the statutory procedures, including written notice, for a rent-escrow action under section 504B.385 before asserting a common-law habitability defense to Ellis's eviction action. In a published decision, the court of appeals held that the tenant was not required to do so. Ellis v. Doe , 915 N.W.2d 24, 28 (Minn. App. 2018). The court of appeals distinguished between a common-law habitability defense in an eviction action brought by a landlord , and a statutory rent-escrow action brought by a tenant for breach of the covenants of habitability. Id. at 28. We granted Ellis's petition for review to clarify the requirements for asserting a habitability defense to an eviction action.[2]
ANALYSIS
The covenants of habitability, made a part of every lease in this state, are codified at section 504B.161, which states that landlords covenant, among other things:
(1) that the premises and all common areas are fit for the use intended by the parties;
(2) to keep the premises in reasonable repair during the term of the lease or license ...; [and]
(4) to maintain the premises in compliance with the applicable health and safety laws of the state, and of the local units of government ....
Minn. Stat. § 504B.161, subd. 1(a)(1)-(2), (4). The statute states that "[t]he parties to a lease or license of residential premises may not waive or modify the covenants imposed by this section." Id. , subd. 1(b). The statute further requires that "[t]his section shall be liberally construed," id. , subd. 3, and that "[t]he covenants contained in this section are in addition to any covenants or conditions imposed by law or ordinance or by the terms of the lease or license." Id. , subd. 4 (emphasis added).
In Fritz v. Warthen , we held that a tenant has a common-law right to assert a violation of the covenants of habitability as a defense to an eviction action. 298 Minn. 54, 213 N.W.2d 339, 343 (1973). Based on the statutory directive to liberally construe the covenants, we concluded that the "covenants of habitability and the covenant for payment of rent are mutually dependent rather than independent." Id. at 341. Because the two covenants are mutually dependent, "the rent, or at least part of it, is not due under the terms of the lease when the landlord has breached the statutory covenants." Id. at 342. We noted that "[t]hree possible alternative remedies are available to enforce the statutory covenants." Id. at 341. The first was for the tenant to raise the landlord's breach as a defense to an eviction action; the second was for the tenant to bring an action against the landlord; and the third was for the tenant to raise the landlord's breach as *262 a defense after vacating the premises and suspending rent payments. Id.
About 15 years after we decided Fritz , the Legislature enacted a statute authorizing a rent-escrow action. Act of June 2, 1989, ch. 328, § 15, 1989 Minn. Laws 2350, 2367-70 (codified as amended at Minn. Stat. § 504B.385 ). Under the statute, a tenant may initiate an action against a landlord to enforce the covenants of habitability. Minn. Stat. § 504B.385, subd. 1(c). A tenant may bring a rent-escrow action "[i]f a violation exists in a residential building" by depositing the rent due to the landlord with the court administrator. Id. , subd. 1(a). For a violation of city codes, the residential tenant may deposit the rent due "along with a copy of the written notice of the code violation[s]." Id. , subd. 1(b). For a violation of the covenants of habitability or a violation of the lease, the tenant must "give written notice to the landlord specifying the violation." Id. , subd. 1(c). If the landlord does not correct the violation within 14 days, the tenant may deposit rent with the court administrator. Id.
We interpret statutory language to "ascertain and effectuate" the Legislature's intent. Minn. Stat. § 645.16 (2018). "When the words of a law in their application to an existing situation are clear and free from all ambiguity," id. , our role "is to enforce the language of the statute and not explore the spirit or purpose of the law." Caldas v. Affordable Granite & Stone, Inc. , 820 N.W.2d 826, 836 (Minn. 2012). In doing so, we construe the law to "give effect to all its provisions." Minn. Stat. § 645.16 ; Allan v. R.D. Offutt Co. , 869 N.W.2d 31, 33 (Minn. 2015).
I.
The tenant asserted the covenants of habitability as a defense to Ellis's eviction action. The initial question here is whether a tenant can raise a habitability defense in an eviction action without following the procedures of a rent-escrow action. We must therefore determine whether the statutory rent-escrow action is a codification of the habitability defense that we articulated in Fritz v. Warthen or a separate, complementary, remedy.
Ellis argues that the statutory rent-escrow action is now the only way for a tenant to assert a violation of the covenants. He therefore contends that a tenant asserting a common-law habitability defense must follow the procedures set out in section 504B.385, including providing written notice to the landlord. Ellis asserts that the rent-escrow action is a codification of our ruling in Fritz because the statute provides "a statutory remedy for tenants experiencing habitability issues with their rental housing." He further maintains that a rule that no notice is required under Fritz would render the rent-escrow statute superfluous; he contends that tenants will simply choose to stop paying rent to force landlords to bring an eviction action rather than initiate proceedings under the rent-escrow statute. We conclude that the statutory authority for a rent-escrow action does not abrogate the common-law habitability defense articulated in Fritz .
First, we presume that "the Legislature does not intend to abrogate the common law unless it does so 'by express wording or necessary implication.' " Siewert v. N. States Power Co. , 793 N.W.2d 272, 281 (Minn. 2011) (quoting Wirig v. Kinney Shoe Corp. , 461 N.W.2d 374, 377-78 (Minn. 1990) ). Nothing in the plain language of the rent-escrow statute expressly or by necessary implication prohibits tenants from raising a habitability defense in an eviction proceeding. In fact, the statute does the opposite.
*263 In subdivision 11 of section 504B.385, the Legislature demonstrated its intent not to displace common-law or other remedies: "The residential tenant rights under this section may not be waived or modified and are in addition to and do not limit other rights or remedies which may be available to the residential tenant and landlord, except as provided in subdivision 1." (Emphasis added.) Accordingly, the statutory rent-escrow action should be seen as a remedy "in addition to" the common-law right to bring a habitability defense to an eviction action. Moreover, subdivisions 3 and 4 from section 504B.161-the covenants of habitability statute-also support a holding that a Fritz defense is still a viable defense for a tenant to assert in an eviction action. These subdivisions state that the covenants should be liberally construed and that they are in addition to any covenants or conditions imposed by law. See Minn. Stat. § 504B.161, subds. 3-4.
Second, reading the rent-escrow statute in context makes it clear that it is intended to be an affirmative action, not a habitability defense for a tenant. The statute states that it applies to a tenant's "action": "[t]he defenses provided [to a landlord] ... are defenses to an action brought under this section ." Minn. Stat. § 504B.385, subd. 3 (emphasis added). The court of appeals aptly reasoned that "a defense is not an action" and held that it was clear "from the plain language of the statute that an action instituted by a tenant is different from a defense asserted by a tenant in response to an eviction action brought by a landlord." Ellis , 915 N.W.2d at 28. We agree.
Minnesota Statutes section 645.45 (2018) provides guidance about the meaning of the word "action."[3] It provides that " 'action' means any proceeding in any court of this state." Minn. Stat. § 645.45(2). Because "proceeding" is not defined in the statute, Ellis looks to the third definition of "proceeding" in Black's Law Dictionary to assert that a defense can be an action in itself.[4] This assertion is unpersuasive because the first definition in Black's Law Dictionary and a comment under the definitions expressly state that a "proceeding" encompasses the entire lawsuit and is broader than any single act in a lawsuit. See Proceeding , Black's Law Dictionary (10th ed. 2014) (citing Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure 3-4 (2d ed. 1899)) (defining "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and commenting that a proceeding "is more comprehensive than the word 'action.' "). Moreover, other dictionary definitions confirm that the broad meaning of "proceeding," and therefore the broad meaning of "action," is applicable here.[5]
Accordingly, the more relevant definitions of "proceeding" support our holding that the statutory rent-escrow action was *264 intended to be for affirmative actions by tenants and does not apply to a habitability defense raised in response to a landlord's eviction action. Placed in context, "an action brought under this section" refers to more than an assertion of a defense in an eviction proceeding brought by a landlord.
Providing further support for our conclusion is that the procedures required by the statute for a rent-escrow action would not logically fit into the timeframe of an eviction action. Eviction proceedings take place on a shortened timeline, and a court can order the tenant's appearance as early as seven days after the summons is issued. See Minn. Stat. § 504B.321, subd. 1(d) (2018). In that case, a 14-day written notice requirement would be impossible to fulfill, unless the tenant somehow knew that the landlord was planning to file an eviction action before the action was even filed. By eliminating the defense of violation of the covenants of habitability in eviction proceedings that last less than fourteen days, this series of events would contravene the Minnesota Rules of Civil Procedure, which permit a party to plead any matter "constituting an avoidance or affirmative defense." Minn. R. Civ. P. 8.03.
Moreover, Ellis's contention that a tenant would never file a rent-escrow action if she could simply wait for the landlord to initiate eviction proceedings is unfounded. A rent-escrow action allows a tenant to be proactive and to avoid the risk of eviction. It offers an opportunity to fix habitability violations much sooner than waiting for the landlord to initiate eviction proceedings. In addition, a tenant may avoid court all together if the tenant provides written notice and the landlord fixes the violations of the covenants before the tenant initiates a rent-escrow action. The continued existence of a common-law defense for tenants who do not initiate such an action does not make the rent-escrow statute superfluous.
The rationale behind Fritz also supports the tenant's position. The holding from Fritz that the covenants of habitability and the covenant to pay rent are mutually dependent supports a conclusion that a tenant should be able to raise the defense, even if the additional remedy of a rent-escrow action now exists. See Fritz , 213 N.W.2d at 341. Because the covenants of habitability and covenant to pay rent are mutually dependent, rent or part of rent may not be due when a violation of the habitability covenants has occurred.
Ellis claims that the Fritz court anticipated and "explicitly invited modification of its holding." He cites language from the opinion stating that a statutory procedure exists for "paying withheld rent into court for cases involving a defense that the landlord increased rent or decreased services as a penalty for the tenant's lawful actions," but the court "also expect[ed] that, as experience dictates, additional rules may be adopted to meet any problems encountered." Fritz , 213 N.W.2d at 343 n.5. Ellis argues that the statutory rent-escrow action is one of those additional rules.
The Fritz court itself, however, differentiated between a tenant's defense to a landlord's eviction action and a tenant's own action for breach of the covenants, calling them "alternative remedies" available to enforce the covenants. 213 N.W.2d at 341. And the "additional rules" that the Fritz court suggested may be necessary were in the context of a footnote discussion of the procedure for depositing rent payments with the court. Id. at 343 n.5. The Fritz court did not suggest additional rules to limit the options tenants may pursue to address violations of the covenants of habitability. This context, along with the specific language of *265 section 504B.385, subdivision 11, that the rent-escrow action does not limit other rights or remedies, make Ellis's argument regarding the Fritz court's anticipation of codification unpersuasive.
The presumption that the Legislature does not intend to abrogate the common law when it does not expressly do so, the plain language of the rent-escrow statute, and the rationale behind the decision of Fritz v. Warthen all support a conclusion that a tenant is not required to follow the procedures of the rent-escrow statute when asserting a common-law habitability defense in an eviction action. Ellis provides no persuasive arguments to the contrary. Therefore, we conclude that the tenant was not required to follow the procedures for a statutory rent-escrow action before asserting his habitability defense to Ellis's eviction action.
II.
Ellis argues that even if we determine that the rent-escrow statute creates an additional remedy for tenants and is not simply a codification of Fritz , we should clarify that written notice is required before a tenant asserts a Fritz defense. We decline to rewrite Fritz to require written notice before a tenant raises a common-law habitability defense to an eviction proceeding.
On one hand, written notice requirements are important tools to safeguard fairness in the litigation of disputes. And most of the processes that require notice in the landlord-tenant context require that notice to be in writing. See, e.g. , Minn. Stat. §§ 504B.135 (2018) (requiring written notice to terminate a tenancy at will); 504B.145 (2018) (requiring written notice to enforce an automatic renewal clause); 504B.206, subd. 1(b) (2018) (requiring written notice to terminate a lease agreement because a tenant has been a victim of violence). Written notice is a valuable part of the landlord-tenant system and protects landlords and tenants alike. Written notice can also give landlords the opportunity to remedy issues before litigation begins.
On the other hand, the Fritz court could have built a written notice requirement into the common-law defense it recognized. Upon examining the Legislature's objective "to assure adequate and tenantable housing within the state," however, the Fritz court noted that allowing breach of the statutory covenants to be asserted as a defense in eviction actions promoted that objective. Fritz , 213 N.W.2d at 342. "If a landlord is entitled to regain possession of the premises in spite of his failure to fulfill the covenants, this purpose would be frustrated." Id.
In addition, requiring written notice before a tenant can raise a common-law habitability defense would frustrate the Legislature's goals and impose a procedural barrier for tenants defending against improper evictions. Both amici list many ways tenants are harmed by improper evictions; by contrast, no evidence in the record shows that landlords are suffering harm from a lack of notice regarding habitability defenses. Certainly, Ellis cannot point to any harm or prejudice that he suffered in this case.[6] The written notice requirement proposed by Ellis will allow those landlords who choose not to make repairs to evict tenants who want the repairs and are withholding rent, simply because *266 the tenant never provided written notice.
Although Ellis's briefing mentions "trial by ambush," he has not articulated any compelling or specific reason showing that a lack of written notice before the tenant raised a defense of habitability violations harmed him, or that it would harm any landlord in any case. On the other hand, the tenant and the amici supporting the tenant's position have articulated compelling policy and rules-based reasons why Ellis's position would effectively deny tenants the right to raise the defense of habitability in many cases. Ellis's standard would permit improper evictions based on a procedural defect, even when tenants have a solid basis for withholding rent. Therefore, we decline to limit Fritz by adding a written notice requirement to the common-law habitability defense to an eviction action.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
Concurring, Gildea, C.J.

After trial, the housing court granted the tenant's motion to amend the case caption to replace his name with the pseudonym "John Doe."

Ellis moved to strike portions of an amicus brief filed by HOME Line, including a declaration included in the addendum to that brief and any reference to the declaration in the brief. We deny the motion, as the amicus brief provides general information pertinent to our consideration of public policy concerns involving landlord-tenant repair disputes. See Camacho v. Todd & Leiser Homes , 706 N.W.2d 49, 52 n.3 (Minn. 2005). The cases cited by Ellis are not on point because they do not address amicus briefs.

Section 645.45 states that words defined within it "when used in any law enacted after the effective date of Laws 1941 ... unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section." Minn. Stat. § 645.45.

The third definition of "proceeding" in Black's Law Dictionary is "[a]n act or step that is part of a larger action." Proceeding , Black's Law Dictionary (10th ed. 2014).

"Proceeding" is defined as "the institution or pursuance of legal action," see The American Heritage Dictionary 1404 (5th ed. 2011); a "legal action," see Merriam Webster's Collegiate Dictionary 929 (10th ed. 1996); and an "action taken in a court to settle a dispute." See Concise Oxford English Dictionary 1144 (11th ed. rev. 2009).

Here, Ellis received notice before the tenant raised his habitability defense to Ellis's eviction action. He received verbal notice from the tenant on several occasions; written notice in the form of the letter that the tenant wrote to him and the notice he received from the city; and additional notice in the form of the exhibits that the tenant filed before the eviction hearing.